Esther A. Peters, Executrix of Will of Mary A. Peters, Deceased, Appellee, v. George W. Peters and Mabel Peters Carpenter, Appellants.

Gen. No. 10,430.

Opinion filed October 20, 1950. Rehearing denied February 7, 1951. Released for publication February 12, 1951.

WARD & WARD, of Sterling, for appellants.

JACOB CANTLIN and SAMUEL RUBIN, both of Rock Falls, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

Mary A. Peters, a widow, died testate on September 6, 1938, leaving surviving, as her heirs-at-law, four children, Esther A., James H., George W. Peters, and Mabel Peters Carpenter, and also six grandchildren, the latter being the children of two deceased sons. At the time of her death, Mary Peters was the sole and undisputed owner of a farm of approximately 360 acres in Whiteside county, Illinois. After providing for the payment of her debts and making small bequests to certain grandchildren, she devised an undivided one-fourth interest in the farm to Esther Peters. In succeeding clauses of her will, she devised three undivided one-fourth interests in the farm to Esther Peters in trust for her three other living children, the income therefrom to be paid them for the duration of their respective lives. Each interest held in trust to pass to Esther Peters, individually, upon the death of the particular beneficiary. Esther Peters was also named as executrix of the will.

Subsequently, the other children of the testatrix engaged in considerable litigation with the executrix.

271

The first trial, in the circuit court of Whiteside county, to contest the will, resulted in a verdict for the executrix and a decree dismissing the complaint. On appeal, the decree was reversed and the cause remanded for a new trial. (*Peters v. Peters,* 376 Ill. 237.) At the second trial, the jury disagreed. Thereafter, the Appellate Court determined that the debts incurred by the executrix in defending the will contests were properly chargeable against the corpus of the estate rather than the income earned during the pendency of the litigation. (*Peters v. Peters,* 321 Ill. App. 357.) The validity of the will was finally sustained in a decree entered by default in December 1946.

On November 24, 1947, the executrix filed a petition in the county court of Whiteside county to sell real estate to pay debts. George Peters and Mabel Carpenter filed a joint answer admitting that the testatrix owned the farm in fee simple at the time of her death and objected to the proposed sale upon the ground of laches, averring that the petition was filed more than seven years after the death of the testatrix and that the delay was not satisfactorily explained. James Peters answered, suggesting that the real estate be mortgaged rather than sold. The county court found that the personal estate was insufficient to pay debts in the amount of $14,139.24 and directed the executrix to sell the real estate, or as much thereof as necessary, to pay the debts and expenses of administration of the estate.

George W. Peters and Mabel Carpenter prosecuted an appeal directly to the Supreme Court, presumably on the theory that a freehold was involved in the litigation. The Supreme Court transferred the case to this court.

Appellants in their stated brief say they rely upon two points only, for reversal of the decision of the trial

court. They contend that the long period between the appointment of the executrix and the filing of her petition to sell real estate to pay debts constitutes laches, which is not satisfactorily explained. They also contend that if a sale of the real estate is ordered, it should only be sold in such a way as to preserve for the appellants their undivided portions of the trust income. The appellees in support of the decree appealed from, claim that the decedent died within a seven-year period prior to the effective date of section 225 of the Probate Act [Ill. Rev. Stat. 1949, ch. 3, par. 379; Jones Ill. Stats. Ann. 110.476] as amended, therefore, the seven-year period for filing the petition to sell real estate to pay debts would not expire until July 25, 1952. The appellee also contends that even though the above statute is not applicable that the executrix has shown good and sufficient reason why the petition to sell real estate to pay debts had not been filed within the seven-year period. In view of the decision we have reached in this case, it will not be necessary for us to construe section 225 of the Probate Act. The reason for the same will appear later in this decision.

It will be observed from the statement of the case that Mary A. Peters, the testatrix, died September 6, 1938, and Esther A. Peters was issued letters testamentary on October. 17, 1938; that on February 14, 1939, the appellants, with other heirs of Mary A. Peters, filed a complaint in the circuit court of Will county to contest the will. They were unsuccessful in their suit, but were successful on their appeal to the Supreme Court. In 1942, the will contest was again tried and the jury disagreed. Nothing was done in regard to this will contest, until December 1946, when the case was set for trial and George W. Peters and Mabel Peters Carpenter did not appear and the case went by default and the will was sustained.

Between December 6, 1946, and the time the petition to sell real estate to pay debts was filed in November 1947, an effort was being made to settle the difficulty between Esther A. Peters and the appellants. No satisfactory adjustment could be made, and then the present suit was started. The law is well stated in a case very similar to this we are now considering in *Moore v. Ellsworth*, 51 Ill. 308. In discussing the law relative to such cases we find the following: "The plaintiffs in error seem chiefly to rely upon the fact that letters of administration were granted in September, 1860, while this petition was not presented until January, 1869, and it is insisted, an order of sale should not have been made after the lapse of seven years. But we held, in *Rosenthal v. Renick*, 44 Ill. 202, that no inflexible rule upon this matter can be laid down. Each case must be judged upon its own merits, and all that can be said as a general rule is, that a delay of seven years, if unexplained, is a sufficient reason for refusing the order, but if the delay is satisfactorily explained, as by showing the settlement of the estate has been necessarily delayed, and the lands remain in the same condition as when the decedent died, the mere lapse of time is not a reason why the order of sale should not be made.

"In this case the record shows, that the largest claim against the estate is a judgment rendered in the circuit court, in June, 1868, and, as urged by counsel, until the termination of the litigation which resulted in this judgment, the administrator would be wholly uncertain to what extent it would be necessary to sell the real estate. In the meantime, so far as appears, the title has remained in the heirs. No equities have intervened, and as the indebtedness of the estate was only finally determined a few months before this application was made, we can not say it was barred by lapse of time."

In the case of *Bursen v. Goodspeed,* 60 Ill. 277, there was a lapse of thirteen years between the time of the testatrix' death, and the time the petition to sell real estate to pay debts was started. The court cites *Moore v. Ellsworth, supra,* with approval. In *Graham v. Brock,* 212 Ill. 579, has this comment to make on *Moore v. Ellsworth, supra.* There was a delay of eight years, but it was satisfactorily explained by showing that the settlement of the estate had been necessarily delayed by litigation, which ended less than a year before the petition was filed, and the court sustained the petition in this case.

In the case of *Baker v. Devlin,* 386 Ill. 441, more than seven years elapsed between the death of the testator and the date that the petition to sell real estate to pay debts was filed. It shows that frequent conferences were held to compromise the indebtedness, and they were successful in reducing the same to a considerable amount. In the case we find this statement. ''The record does not disclose the details of the time and labor required in obtaining a withdrawal of some of the claims and reduction of others but it does appear that it was accomplished without the payment of money from the estate. It is obvious that the accomplishment of such results would necessarily require time. Under the circumstances shown, the probate court was warranted in holding that the petition to sell was not barred by laches.''

██ There seems to be little, if any, question relative to the law concerning such cases. If a period of more than seven years elapsed between the death of the testator, and the time that the petition to sell real estate to pay debts is filed, the creditor loses his lien upon the real estate, unless the delay is satisfactorily explained. It now becomes a question of fact in this case whether the delay is satisfactorily explained. It will be observed that practically the whole delay was

caused by the appellants in contesting the will, and under the circumstances we think that the appellee has stated facts, which show due diligence on her part, and the delay is satisfactorily explained.

It is insisted by the appellants that the appellee could have filed the petition to sell real estate to pay debts while the will contest was being tried. They cite the case of *Kellan v. Kellan,* 258 Ill. 256, 271, as sustaining their contention. An examination of this case discloses that there was sufficient money on hand to pay the claims of the nurse and physician during the last illness of the deceased. Under such circumstances, the court stated that the executor would be protected by an order of court in approving his act in paying these bills. It is a very different situation from the present case where title to real estate is involved, it certainly would be a risky thing for a purchaser to buy real estate under such circumstances.

It is also insisted that the court erred in ordering the land sold so that it would not affect appellants' income from the land.

██ The law is clearly stated in the case of *People ex rel. Wells v. Lanham,* 189 Ill. 326, 334, and in that we find the following: ''Creditors are not compelled, as at common law, in order to procure satisfaction of their debts, where there is a deficiency of assets for the purpose, to pursue the lands into the hands of the heir, or to charge the heir with its value in the case of an alienation by him. They have only to establish their demands against the administrator and he is required to make payment out of the personal estate and, when that proves insufficient, to convert enough of the real estate into assets to meet the deficiency. The statute, in effect, reserves a lien on the lands of an intestate to secure the payment of any excess of indebtedness beyond the proceeds of the personal estate. This lien is to be enforced by the administrator

for the benefit of the creditors generally. The lien, however, is not perpetual, but may be lost by gross laches or unreasonable delay. The real estate descends to the heir with this charge resting upon it. He cannot encumber or alien it to the prejudice of the rights of creditors. He acquires a vested, but not an absolute, interest in the land. He takes a defeasible estate, liable to be defeated by a sale made by the administrator, in the due course of administration. He has no just claim to the land until the indebtedness of his ancestor is fully discharged. He acquires an absolute title only to what remains after the debts are extinguished.'' As stated in the above case the heirs or devisees do not take an absolute interest in the land, but one subject to the payments of debts of their ancestors, and under the circumstances in this case, the court properly held that their shares should contribute equally to the payment of the testator's debts. The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*