Carolyn BRAFMAN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 23250.

United States Court of Appeals
Fifth Circuit.

Oct. 23, 1967.

Jerome J. Bornstein, Bishop, Bornstein, Turnbull & Petree, Orlando, Fla., for appellant, David Gluckman, Orlando, Fla., of counsel.

Mitchell Rogovin, Asst. Atty. Gen., Richard M. Roberts, Act. Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Joseph Kovner, Howard J. Feldman, Attys., Dept of Justice, Washington, D. C., Edward F. Boardman, U. S. Atty., Tampa, Fla., for appellee.

Before TUTTLE and WISDOM, Circuit Judges, and BREWSTER, District Judge.

WISDOM, Circuit Judge:

This case is before the Court on the issue of the liability of the defendant, Carolyn Lazarowitz Brafman, as an alleged transferee of the Estate of Abraham Lazarowitz, for unpaid estate taxes.[1]

---

1. A Tax Court deficiency judgment was entered against the estate of Abraham Lazarowitz for unpaid estate taxes in the amount of $12,235.83 and a penalty of $2,557.17. Subsequent payments have reduced the balance to $9,920.33 plus in-

terest from the date of assessment. The district court entered judgment for the Government for $6,136.23 already received by Mrs. Brafman under the insurance policies and $3,933.70 withheld by the insurance company for her pending final

Lazarowitz died on January 20, 1951. Among his assets were five insurance policies with a total face value of $100,000. These policies provided that on his death, the interest on the proceeds should be paid to his widow, during her lifetime. On her death, the daughter, Carolyn, would receive an interest in one-fifth of the proceeds.[2] Mrs. Lazarowitz died in December 1951. Since then Carolyn Brafman has received $6,136.23 under the policies as of the date of the judgment in the court below.

■ The executors of the Estate of Lazarowitz failed to file a timely estate tax return. On July 29, 1952, the executors filed a return with a check for the tax due as shown on the return. June 29, 1955, the Director of Internal Revenue notified the executors that there was a gross deficiency in taxes paid of $19,241.49, together with a penalty of twenty percent. The executors challenged the deficiency in a proceeding in the Tax Court, and the matter was settled by a written stipulation executed on June 11, 1956.[3] June 20, 1956, the United States Tax Court entered a decision finding a deficiency against the estate for unpaid estate taxes in the amount of $12,235.83 and a penalty in the amount of $2,449.17. July 23, 1956, a purported assessment was levied against the Estate of Abraham Lazarowitz for the unpaid taxes, the penalty, and interest to the date of assessment. August 28, 1956, the Commissioner notified the Estate of the assessment made demand for payment. The Estate is without assets with which to pay any debts or obligations.

The United States filed this suit for collection against Carolyn Brafman, as transferee, July 23, 1962. The Government contends that her contingent interest passed to Carolyn at the time of her father's death, and that the value of the interest as of that moment is ascertainable by recognized actuarial principles based upon the joint life expectancy of Carolyn and her mother. The Government seeks to collect its assessment against Carolyn Brafman on the theory that she holds the proceeds of the policies in trust. The Government concedes that a suit against her based on her personal liability would be barred by the statute limitations. Mrs. Brafman contends that the value of her contingent interest at the date of the decedent's death was too speculative to be ascertainable. She denies that the payments she receives are subject to a trust for the payment of the estate tax. The district court entered judgment for the Government for $6,136.23 Mrs. Brafman had already received plus $3,933.70 withheld by the insurance company. The Court held that future amounts receivable by Mrs. Brafman must be turned over to the United States until the entire tax deficiency is extinguished.

We do not reach the complex and tantalizing issue of a trust-fund theory of transferee liability for the transfer of a contingent insurance interest. The threshold issue of the validity of the assessment is crucial. We reverse on the ground that a valid assessment against the transferor's estate was not made, because of an assessment officer's fail-

---

determination of this action. The court further held that future amounts receivable by Mrs. Brafman under the policies must be turned over to the United States until the total tax liability of the estate, at that time $16,221.51, is extinguished.

2.  After her mother's death Mrs. Brafman would receive monthly payments of the interest attributable to her one-fifth share of the policies until she reached the age of fifty. At that time she would begin receiving payments composed of both the interest and the proceeds of the

policies on a twenty-year-certain-and-for-life thereafter basis. If her mother should live beyond Mrs. Brafman's fiftieth birthday, the payments of interest and proceeds would begin immediately upon the mother's death in an amount determined by Mrs. Brafman's age at that time.

3.  This determination of liability of the estate, i. e. the transferor, may not now be relitigated by the transferee. First National Bank of Chicago v. Commissioner, 7 Cir. 1940, 112 F.2d 260, cert. denied 311 U.S. 691, 61 S.Ct. 72, 85 L.Ed. 447.

ure to sign the certificate of assessment. The Government's claim against the transferee is proscribed by the statute of limitations governing this action.

\*   \*   \*   \*   \*   \*

For a tax to be collected upon any deficiency, an assessment must be made against the taxpayer within three years after his return is filed. Int.Rev.Code of 1939, § 874 (§ 6501 of the 1954 Code). The mailing of a ninety-day letter of deficiency or the filing of any court action will suspend the running of the statute of limitations, and the time will not begin to run again until sixty days from the entry of final judgment of that court or until ninety days following the mailing of the letter of deficiency if no proceedings are begun. See Int.Rev.Code of 1954, § 6213. In the case of a transferee, a separate section provides that the assessment must be filed against the transferee within one year after the expiration of the period of limitation for assessment against the original transferor. Int.Rev.Code of 1939, § 900(b)(1) (§ 6901(c)(1) of the 1954 Code)

▇ If the estate is not assessed within the statutory period there can be no transferee liability. United States v. Updike, 1930, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984. For the Government to collect any tax from the transferee, Mrs. Brafman, a valid assessment must have been made against the estate of the transferor, Abraham Lazarowitz, by September 28, 1957.

There is no disagreement that if the assessment against the estate was made on July 23, 1956, as the Government argues and the documents apparently indicate, the assessment of the transferor

was timely. Mrs. Brafman contends, however, that no valid assessment was made on July 23, 1956, because the assessment certificate was not signed.

▇ Section 6203 of the Internal Revenue Code of 1954 specifies that an assessment [4] shall be made by recording the liability of the taxpayer in the office of the Secretary or his delegate in accordance with rules or regulations prescribed by the Secretary or his delegate. The Treasury Regulations set forth the procedures governing the assessment process as follows:

> The District Director shall appoint one or more assessment officers, and *the assessment shall be made by an assessment officer signing the summary record of assessment.* The summary record, through supporting records, shall provide identification of the taxpayer, the character of the liability assessed, the taxable period if applicable, and the amount of the assessment. The amount of the assessment shall in the case of tax shown on a return by the taxpayer, be the amount so shown, and in all other cases the amount of the assessment shall be the amount shown on the supporting list or record. *The date of the assessment is the date the summary record is signed by an assessment officer.* \* \* \* Treas. Reg. § 301.6203–1 (1955) (emphasis added.)

▇ The assessment certificate involved in this case, a photostated copy of which is in the record, is not signed by an assessment officer or by any other official. The certificate refers to July 23, 1956, but shows that it was "prepared" August 1, 1956. Apparently this is the

---

4. Taxes shown due on returns, deficiencies, delinquent taxes, penalties and interest, and additions to taxes are recorded as "assessments". 26 C.F.R. § 601.104 (1966). "The assessment is an administrative determination that one is indebted to the Government—in effect, it is a judgment for taxes found due." 9 Mertens, Federal Income Taxation § 49.186 (1965). The sending of notice is not necessary to the validity of an assessment, Filippini v.

United States, N.D.Cal.1961, 200 F.Supp. 286, although it is with a deficiency notice, Int.Rev.Code of 1954 § 6212. A signature is not necessary for validity of the latter, however, as the notice is the important element. See Commissioner of Internal Revenue v. Oswego Falls Corp., 2 Cir. 1934, 71 F.2d 673; 9 Mertens, Federal Income Taxation § 49.186 (1965).

date on which the assessment was to be formally certified, as it appears twice in the certification portion of the form. Since the certificate lacks the requisite signature, it cannot constitute a valid assessment.

We are not moved by the Government's argument that the assessment was valid and effective on July 23rd because it is certified for authenticity under the seal of the United States Treasury. There is no question as to the authenticity of the document or its admissibility into evidence.[5] But authenticity of the certificate cannot be equated with validity of the assessment on the alleged date: a seal establishes the former, a signature of the assessment officer—as required by the Treasury Regulations—establishes the latter.

■ We find section 301.6203–1 of the Treasury Regulations reasonably adapted to carry out the intent of Congress as reflected in § 6203 of the Code.[6] We therefore adhere to our pronouncement in United States v. Fisher, 5 Cir. 1965, 353 F.2d 396, 398–399, that:

> In the absence of any better test, we give effect to the generally recognized rule that Regulations issued by the Secretary of the Treasury, pursuant to statutory authority, and when necessary to make a statute effective, although not a statute, may have the force of law. Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397; Commissioner of

Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831.

The Treasury Regulations are binding on the Government as well as on the taxpayer: "Tax officials and taxpayers alike are under the law, not above it." Pacific National Bank of Seattle v. Commissioner, 9 Cir. 1937, 91 F.2d 103, 105.[7] Even the instructions on the reverse side of the assessment certificate, Form 23C, specify that the original form "is to be transmitted to the District Director for signature, after which it will be returned to the Accounting Branch for permanent filing. * * *"

Case after case has quoted Treasury Regulation § 301.6203–1 and cited it approvingly, and the treatises on taxation take its literal application for granted.[8] In United States v. Miller, 7 Cir. 1963, 318 F.2d 637, the administrator of an estate executed an estate tax Waiver of Restrictions on Assessment, which was accepted by the Commissioner on February 16, 1956. The Commissioner made assessments by certificate on March 8 and April 13, 1956. Suit for collection was not brought until March 2, 1962. An intervenor argued on appeal that acceptance of the waiver amounted to assessment which commenced the running of the statute of limitations. The Court rejected this argument, saying that "assessment", as referred to in § 6502 of the Code, "has a technical meaning spelled out in the Code and that

---

5. In United States v. Ettelson, 7 Cir. 1947, 159 F.2d 193, relied on by the Government, the pertinent issue was whether there was "competent evidence" that the assessments were made within the limitation period. The Court held that "[s]ince these certified copies were under the seal of the Treasury Department, they were admissible in evidence. * * *" 159 F.2d at 195. There was no question raised concerning the validity of the assessment by virtue of some internal defect. Accord, Adams v. United States, 1966, 358 F.2d 986, 994, 175 Ct.Cl. 288; United States v. Miller, 7 Cir. 1963, 318 F.2d 637, 638.

6. See below at n. 10, for a brief discussion of the legislative history of § 6203 and its relevance to the present issue.

7. Accord, Miller v. Commissioner, 8 Cir. 1964, 333 F.2d 400; McCord v. Granger, 3 Cir. 1952, 201 F.2d 103; Warner Bros. Pictures, Inc. v. Westover, S.D.Cal.1947, 70 F.Supp. 111.

8. E. g., Mertens, Code Commentary § 6204 (1964): "The Regulations provide that the assessment shall be made by an assessment officer signing the summary record of assessment. The date on which that is done is the assessment date." Accord, 9 Mertens, Federal Income Taxation § 49.81 (1965).

meaning is binding on this court." [9] The Court continued:

> The district court properly considered the copy of the official Certificate of Assessments and Payments submitted by the Government in ruling on the motion for summary judgment. * * That document shows that assessment entries were made on March 8, and April 13, 1956, *in the manner prescribed by the statute and the applicable regulation*. Since the present suit was filed by the Government on March 2, 1962, it was not barred by the applicable statute of limitations. 318 F.2d at 639, (emphasis added).

The taxpayer in Filippini v. United States, N.D.Cal.1961, 200 F.Supp. 286, argued that the assessment was not effective until notice was sent to him, and notice was not sent until three days after the running of the statute of limitations. The Court found that the assessment was "made and complete" when the procedure outlined in the Code and Regulations—including the signing of the summary record by the assessment officer—was followed. In accord with *Filippini* and *Miller* are Graper v. United States, E.D.Wis.1962, 206 F.Supp. 173; In re Milwaukee Crate & Lumber Co., E.D.Wis. 1961, 206 F.Supp. 115. See also Commissioner of Internal Revenue v. Welch, 5 Cir. 1965, 345 F.2d 939, 948 n. 33.

When § 6203 of the Internal Revenue Code of 1954 was before Congress, the detailed discussions of the proposed section in both the House and Senate was substantially the same:

> This section is a substantial clarification of existing law. It provides that the assessments shall be made by recording the liability of the taxpayer in accordance with rules or regulations of the Secretary. This will permit recording of liability, and hence assessment, through machine operations or through any other modern procedure. The Secretary is directed to furnish to the taxpayer, upon request, a copy of the record of the assessment of that taxpayer's liability.[10]

It appears to us that the requirement of the applicable Treasury Regulation—that an assessment officer sign the assessment certificate—is consistent with the literally mechanical procedures for recording of liability. The recordation is to be accomplished through "machine operations", but the actual and final assessment step, that step which establishes a prima facie case of taxpayer liability, [11] can be taken only with the approval of a responsible officer of the Internal Revenue Service. The Government may want to postpone assessment in certain cases because of the limitations on collection and lien perfection that begin to run at the time of assessment. This might be accomplished, after the computers have run their course, only by the assessment officer refusing to sign the already prepared certificate.[12] What is important in any case is that assessment is not automatic upon recordation; it requires the action of an assessment officer. That action, as defined explicitly in the Treasury Regulations, is the signing of the certificate.

We recognize that in sustaining Mrs. Brafman's contention regarding lack of proper assessment within the limitations period we are disposing of this case on what could be termed a "technical defense". As the district court said in

---

9. In a footnote to this statement the Court quoted the Regulation, § 301.6203–1, and the Court supplied emphasis to the sentence: *"The date of the assessment is the date the summary record is signed by an assessment officer."* 318 F.2d 637, 639 n. 2.

10. H.Rep. No. 1337, 83d Cong., 2d Sess., 1954 U.S.Cong. & Adm.News p. 4552; see S.Rep. No. 6122, 83d Cong., 2d Sess., 1954 U.S.Cong. & Adm.News p. 5220.

11. 26 C.F.R. § 601.104.

12. As was noted previously, the assessment form in this case contained a date in the certification portion some nine days later than that specified in the mechanical portion. Furthermore, the *date of preparation* shown on the form at the bottom was the later date, not the earlier one.

United States v. Lehigh, W.D.Ark.1961, 201 F.Supp. 224, 234, this is both true and immaterial:

Any procedural defense is in a sense "technical." The procedures set forth in the Internal Revenue Code were prescribed for the protection of both Government and taxpayer. Neglect to comply with those procedures may entail consequences which the neglecting party must be prepared to face, whether such party be the taxpayer or the Government.

Certainly the courts have not hesitated to enforce strictly the Code requirement that a taxpayer's returns must be signed to be effective. Thus, unsigned returns, even with remittances, have been viewed as nullities from the standpoint of imposition of penalties [13] and of commencement of the running of the statute of limitations.[14] It has availed the taxpayer little that his failure to sign was inadvertent.[15]

Finally, where state taxation is involved compliance with a statutory provision requiring an assessment list to be signed by the assessors is usually considered essential to the validity of further proceedings. 84 C.J.S. Taxation § 473 (1954).

\* \* \*

Since the assessment certificate in this case was not signed by the proper official, as prescribed by the applicable Treasury Regulation, within the statutory period after the filing of the estate tax return, this suit for collection of any deficiency is barred by the statute of limitations. The judgment of the district court is therefore reversed and the cause remanded for dismissal.

---

13. Doll v. Commissioner, 3 Cir. 1966, 358 F.2d 713; Estate of Josephine Clay Simpson, T.C. Memo 1962–71, ¶ 62,071 P–H Memo TC.

14. Reaves v. Commissioner, 5 Cir. 1965, 295 F.2d 336; Estate of Glen Stewart, T.C. Memo 1955–107, ¶ 55,106 P–H Memo

TC; see Lucas v. Pilliod Lumber Co., 1930, 281 U.S. 245, 50 S.Ct. 297, 74 L.Ed. 829.

15. Plunkett v. Commissioner, 1 Cir. 1941, 118 F.2d 644; Estate of Josephine Clay Simpson, T.C. Memo 1962–71, ¶ 62,071 P–H Memo TC.