NANCY J. GUMM, AKA NANCY J. GUMM ERRICHETTI, TRANSFEREE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ELLEN GUMM BAILEY, FORMERLY KNOWN AS ELLEN GUMM REUBEN, TRANSFEREE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 12065-85, 12586-85.    Filed October 11, 1989.

Nancy J. Gumm, pro se in docket No. 12065-85.
*Robert E. Noel,* for the petitioner, in docket No. 12586-85.
*Jeffrey A. Hatfield,* for the respondent.

SWIFT, *Judge:* In separate notices of transferee liability, each dated February 15, 1985, respondent determined that petitioners were liable as transferees for the Federal estate tax deficiency and addition to tax determined against the estate of Martha O'Hair Kirsten (the estate) as follows:

| Date of death | Estate tax | Addition to tax sec. 6651(a)(2) [1] |
|---|---|---|
| May 19, 1980 | $9,018.27 | $721.46 |

There is no dispute as to the liability of the estate for the deficiency and addition to tax. The only issue for decision in these consolidated cases is whether petitioners are liable therefor as transferees of the estate.

---

[1] All section references are to the Internal Revenue Code of 1954 as in effect as of the date of decedent's death.

At trial, petitioner objected to the admission of an alleged copy of an unsigned transcript of a tape-recorded interview of Richard Z. Gumm, M.D. conducted by respondent. The alleged transcript was not adequately authenticated, and we sustain petitioners' objection. Rule 1003, Fed. R. Evid.

### FINDINGS OF FACT

Many of the facts have been stipulated and are so found.

At the time they filed their separate petitions, Nancy J. Gumm Errichetti (Nancy Gumm) resided in Scottsdale, Arizona, and Ellen Gumm Bailey resided in San Diego, California. Nancy Gumm did not appear at the trial of this case. Unless otherwise indicated, references to petitioner in the singular are to Ellen Gumm Bailey.

Decedent, Martha O'Hair Kirsten, died testate on May 19, 1980. At the time of death, decedent resided in Paris, Illinois. Decedent was survived by her spouse, Walter Kirsten, and her three children—Richard Z. Gumm, M.D. (Dr. Gumm), Nancy Gumm, and Ellen Gumm Bailey.

Under decedent's will, a life estate in the family residence passed to decedent's spouse, Walter Kirsten. The will also provided that the residue and remainder of decedent's estate be divided and distributed equally to her three children. The will further provided that all estate and death taxes be paid out of the estate as an expense of administration without apportionment.

On July 16, 1980, decedent's will was admitted to probate in the Fifth Judicial Circuit, Edgar County, Illinois. On the same day, the probate court appointed Dr. Gumm executor of decedent's estate. At the time of trial, no accounting had been filed by the executor with the probate court.

On February 23, 1981, Dr. Gumm filed a Federal estate tax return on behalf of the estate. On the return, the estate's net estate tax liability was reported as $101,451.54, which the estate paid on February 23, 1981.

On or about March 18, 1981, the executor presented a $9,807.95 check to the Treasurer of Edgar County, Illinois, in payment of Illinois death taxes due from the estate and credit with respect thereto was claimed on the Federal estate tax return. The check was dishonored when presented for payment by the County Treasurer.

On May 1, 1981, Dr. Gumm filed an amended Federal estate tax return on behalf of the estate. The amended return reflected a net estate tax liability of $93,850.90—a reduction of $7,600.64 from the liability reported on the original return and an amended Illinois death tax liability of $9,018.27.

On or about September 14, 1981, respondent issued a refund check to the estate in the amount of $8,090.41. The refund consisted of the sum of the claimed overpayment in the amount of $7,600.64 and interest in the amount of $489.77. The Illinois death tax liability was never paid by the estate.

*Transfers of Estate Property*

Soon after decedent's death and pursuant to the terms of decedent's will, transfers or distributions of estate property were made to Dr. Gumm and to petitioners. Some of the property along with the undisputed value thereof transferred or distributed to petitioner Ellen Gumm Bailey is listed below:

| Property description | Value |
| --- | --- |
| 100 shares of Diamond Shamrock Stock | $2,781.25 |
| 937 shares of Nevada Power Stock | 22,429.44 |
| Nuveen Tax Exempt Bond Trust, Series 91 | 4,021.00 |
| American Tax Exempt Bond Trust, Series 23, 9 units | 5,779.00 |
| American Tax Exempt Bond Trust, Series 13, 3 units | 2,343.00 |

Transfers or distributions of the following property of the estate were made to petitioner Ellen Gumm Bailey but no credible valuation is found in the record with respect thereto: a truck-repair garage and shop, a 50-percent interest in an automobile body shop, an interest in an office building, and a Cadillac Fleetwood automobile.

On April 19, 1982, Walter Kirsten died. The family residence passed to petitioners and to Dr. Gumm under the terms of decedent's will. On August 19, 1982, petitioners and Dr. Gumm and his wife sold the family residence to a third party for $61,000. Petitioners each received a distribution of approximately one-half of the proceeds from the sale of the family residence. The record does not indicate that Dr. Gumm and his wife received any proceeds from this sale.

Prior to decedent's death, Dr. Gumm had borrowed money from decedent and had executed promissory notes in favor of decedent. Dr. Gumm also was a partner with decedent and Nancy Gumm in a partnership known as First Securities Income Fund (FSIF). The partnership was formed in 1979 for the purpose of engaging in stock and option transactions. During 1982, liquid assets of the estate worth at least $100,000 were lost apparently in conjunction with FSIF investments or other investments while Dr. Gumm served as executor of the estate. Also, the estate was paid only a portion of the promissory notes owed to it by Dr. Gumm. The estate did not file a claim or lawsuit against Dr. Gumm relating to the investment losses, and the estate apparently did not file a claim or lawsuit against Dr. Gumm to obtain a judgment on the amount owed on the promissory notes.

In 1982, after the above-mentioned estate assets worth at least $100,000 were lost, the last parcels of real property owned by the estate (the four lots) were distributed for no consideration to Dr. Gumm and to petitioners. On February 10, 1983, Dr. Gumm and petitioners sold the four lots to Richard C. O'Hair, decedent's brother, for $36,000. Proceeds from the sale were apparently distributed in equal parts of $12,000 to Dr. Gumm and to each petitioner. No assets remained in the estate after distribution of the four lots.

After suffering major financial difficulties for a number of years prior to 1984, due in part to losses in connection with the stock and option investments of FSIF, Dr. Gumm filed for bankruptcy on July 2, 1984, and relief subsequently was granted under Chapter 7 of the Bankruptcy Code, 11 U.S.C.

## Respondent's Assessment and Collection Efforts

On June 10, 1981, respondent sent a letter to the estate addressed to Dr. Gumm informing him that the credit claimed by the estate pursuant to section 2011 with respect to Illinois death taxes would only be allowed if evidence of payment was provided to respondent. On December 31, 1981, and May 13, 1983, respondent again sent letters to the estate addressed to Dr. Gumm notifying him that a liability in the amount of the credit claimed by the estate for Illinois death taxes would be assessed against the estate

unless evidence of payment was produced. Dr. Gumm apparently did not respond to these letters. Respondent did not send a notice of deficiency to the estate.

Respondent alleges that on October 10, 1983, an assessment was made in the amount of $9,018.27 against decedent's estate disallowing the claimed credit in that amount for the unpaid Illinois death taxes. Although no certificate of assessment against the estate is contained in the record, the record does contain Forms 3031, Reports of Investigation of Transferee Liability, prepared with respect to petitioners, attached to which were Forms 4907, Transcripts of Account, which indicate that on October 10, 1983, an assessment in the amount of $9,018.27 was made against the estate.

In its unsuccessful effort to collect the estate's $9,018.27 estate tax deficiency, respondent's agents contacted the executor and the executor's representatives, examined respondent's collection file, contacted representatives of the State of Illinois, and undertook other actions to confirm payment of the Illinois death taxes, and to locate undistributed assets of the estate to apply toward the estate's Federal estate tax liability. In light of the fact that the statute of limitations on assessment of transferee liability was about to expire, respondent issued a timely notice of transferee liability to Dr. Gumm and to each petitioner on February 15, 1985.

At the time of trial, the administration of the estate remained nominally open.

OPINION

Section 6901(a) provides a procedure through which respondent may collect from a transferee of assets unpaid taxes owed by the transferor of the assets if a basis exists under State law or equity for holding the transferee liable. *Commissioner v. Stern,* 357 U.S. 39, 42-47 (1958); *Berliant v. Commissioner,* 729 F.2d 496, 499 (7th Cir. 1984), affg. a Memorandum Opinion of this Court; *Dillman v. Commissioner,* 64 T.C. 797, 800 (1975). Respondent bears the burden of proving that he has satisfied the procedural requirements of section 6901(a) and that the transferee is

liable, as a transferee, under State law or equity. Sec. 6902(a).

The procedural requirements of transferee liability that must be established by respondent under section 6901(a) are the following: (1) That the alleged transferee received property of the transferor, section 6901(a); *Leach v. Commissioner*, 21 T.C. 70, 75 (1953); (2) that the transfer was made without consideration or for less than adequate consideration, *Estate of Miller v. Commissioner*, 42 T.C. 593, 599 (1964); (3) that the transfer was made during or after the period for which the tax liability of the transferor accrued, see 14 J. Mertens, Law of Federal Income Taxation, sec. 53.01, p. 3 and sec. 53.38 p. 99 (1987) (see also *Kreps v. Commissioner*, 42 T.C. 660, 669 (1964), affd. 351 F.2d 1 (2d Cir. 1965)); (4) that the transferor was insolvent prior to or because of the transfer of property or that the transfer of property was one of a series of distributions of property that resulted in the insolvency of the transferor, *Leach v. Commissioner, supra* at 75; *Ginsberg v. Commissioner*, T.C. Memo. 1965-36; (5) that all reasonable efforts to collect from the transferor were made and that further collection efforts would be futile, *Kuckenberg v. Commissioner*, 35 T.C. 472, 482 (1960), modified on other points 309 F.2d 202 (9th Cir. 1962); *Estate of Miller v. Commissioner, supra* at 599; and (6) the value of the transferred property (which determines the limit of the transferee's liability), *Stokes v. Commissioner*, 22 T.C. 415, 428 (1954).

It is clear that petitioners received estate property as a result of transfers made after the estate's tax liability accrued for which petitioners paid no consideration. The value of the property transferred to each petitioner exceeds the amount of the Federal estate tax liability of the estate. We therefore conclude that respondent has established the first, second, third, and sixth of the above-enumerated procedural requirements necessary to establish petitioners' transferee liability under section 6901(a).

We turn to the fourth procedural requirement (namely, insolvency of the transferor at the time of or as a result of the transfer). Petitioners argue that after petitioners received their share of estate property, the estate was not insolvent because it still had various choses in action or

claims against Dr. Gumm relating to the outstanding debt obligations Dr. Gumm owed the estate and relating to Dr. Gumm's mismanagement of estate assets. Respondent argues that the choses in action were not assets that realistically could be reached or levied upon by respondent and that they could not reasonably be applied toward the Federal estate tax liability of the estate. Respondent therefore argues that the choses in action should be disregarded in determining the insolvency of the estate.

In determining whether a transferor is insolvent at the time of or as a result of a transfer, assets on hand at the time of the transfer that could not reasonably be reached or levied upon by respondent to satisfy the transferor's Federal tax liability are not considered. *Brown v. Commissioner,* 24 T.C. 256, 266-267 (1955). Petitioners, however, cite a number of cases for the general proposition that choses in action in the nature of unliquidated contract or tort claims may constitute property rights to which a Federal tax lien can attach, and petitioners therefore argue that the estate's alleged claims against Dr. Gumm should be taken into account. See *United States v. Hubbell,* 323 F.2d 197 (5th Cir. 1963); *In re Marriage of Burt,* 144 Ill. App. 3d 177, 494 N.E.2d 868 (1986). In the context of section 6901, however, respondent is not required to take into account or to pursue all possible, speculative claims the transferor may have against third parties. *Wilcox v. Commissioner,* 16 T.C. 572 (1951), affd. per curiam sub nom. *Bosworth v. Commissioner,* 194 F.2d 102 (2d Cir. 1952). As has been stated—

Such a requirement would only involve the Government in protracted litigation which is inconsistent with the legislative intent to provide the Commissioner with a summary procedure for the collection of taxes from the transferee. [See 158-3d Tax Mgmt. at A-5 (BNA 1987).]

Regardless of the correctness of the cases on which petitioners rely, because of Dr. Gumm's poor financial condition at the time of the transfers through the time of trial in this case, including his bankruptcy proceeding in 1984, and on the facts of this case, the estate's purported choses in action or claims against Dr. Gumm must be regarded as speculative and uncollectible. We conclude that the purported choses in action or claims allegedly held by

the estate against Dr. Gumm had no value for purposes of determining whether the estate was insolvent under section 6901.

Petitioners alternatively argue that under Illinois law title to the real property of the estate actually vested in Dr. Gumm and petitioners (as devisees under decedent's will) immediately on the date of decedent's death (i.e., on May 19, 1980), and therefore that the transfers of real property to petitioners from the estate occurred on that date, at which time the estate owned sufficient assets to satisfy its Federal estate tax liability and at which time the estate was solvent. Respondent counters that for purposes of section 6901, the real property of the estate should be regarded as having been transferred to Dr. Gumm and petitioners at the time the property was distributed by the estate, not on the date of decedent's death. Respondent argues specifically that the four lots, which were distributed to petitioners in 1982, were the last properties held in and distributed by the estate and that (if the estate was not already insolvent) the estate was rendered insolvent by that distribution.

Under Illinois law, title to real property passing under a will generally passes to and vests in a devisee at the time of the testator's death. *Meppen v. Meppen,* 392 Ill. 30, 63 N.E.2d 755, 757 (1945); *In the Matter of Estate of Hall,* 127 Ill. App. 3d 1031, 469 N.E.2d 378, 380 (1984). Within the context of section 6901, however, the definition of transferee includes a "devisee," a "distributee," and a "distributee of an estate of a deceased person." Sec. 6901(h); sec. 301.6901-1(b), Proced. and Admin. Regs.

Also, under Illinois law, a devisee does not acquire absolute title to real property devised to him under the terms of a will until all indebtedness of the decedent is fully discharged.[2] *Peters v. Peters,* 342 Ill. App. 270, 96 N.E.2d

---

[2]Ill. Ann. Stat. ch. 110 ½, par. 18-14 (Smith-Hurd 1978) provides as follows:

Sec. 18-14. Estate chargeable with legacies, expenses and claims

*All the real and personal estate of the decedent and the income therefrom during the period of administration are chargeable with the claims against the estate, expenses of administration, estate and inheritance taxes and legacies without distinction except as otherwise provided in this Act or by decedent's will* and may be leased, sold, mortgaged or pledged as the court directs in the manner prescribed in this Act. In determining what property in the estate shall be leased, sold, mortgaged or pledged for any purpose provided in this Section, *there is no priority as between real and personal estate, except as provided in this Act or by decedent's will.* P.A. 79-328, sec. 18-14, eff. Jan. 1, 1976. [Emphasis added].

369 (1950). An administrator or executor has the power to subject real property of an estate to sale for payment of debts of the estate, regardless of who holds nominal title to the property. *Burr v. Bloemer,* 174 Ill. 638, 640, 51 N.E. 821 (1898).

In *Ryan v. Jones,* 15 Ill. 1, 3-4 (1853), the Supreme Court of Illinois explained Illinois law that enables creditors of an estate to reach real property in the hands of an heir or ·devisee where the personal estate of the decedent is not sufficient to satisfy the estate's outstanding debts. The court stated—

The devisee has no just claim to the lands, until the debts of the testator are fully discharged. Nor has the heir any superior right to the lands of his ancestor. They both acquire the lands subject to the payment of the debts of the former owner. They are only entitled to the surplus that may remain after those debts are discharged. If the creditor can not obtain satisfaction of his debt from the personal estate, he may resort to the real estate in the hands of the heirs or devisees; and in the case of a bona fide alienation of the same before suit [is] brought, he may charge them personally with its value. [*Ryan v. Jones, supra* at 4.]

See also *Durflinger v. Arnold,* 329 Ill. 93, 160 N.E. 172 ( 1928).

Also, we note that only property or the value thereof that a transferee actually receives from a transferor triggers transferee liability under section 6901. *United States v. Floersch,* 276 F.2d 714, 717-718 (10th Cir. 1960).

Based upon the above authorities and under Illinois law, the transfer of real property from an estate, for purposes of section 6901, is to be regarded generally as occurring not on the date of death of the decedent but at the time of physical transfer or distribution, by deed or otherwise, of real property to the heirs or devisees.

As a result of the transfers of the four lots to petitioners in 1982, the estate, if not already insolvent, was rendered insolvent. Petitioners each received $12,000 in proceeds from the sale of the four lots, which amount exceeded the estate's Federal estate tax liability. The fourth procedural requirement of section 6901(a) is thus established.

Petitioners next allege with respect to the fifth procedural requirement of section 6901(a) that respondent did not send

---

See also Ill. Ann. Stat. ch. 59, par. 12 and Ill. Ann. Stat. ch. 110½, par. 20-1.

a notice of deficiency to the estate for the $9,018.27 Federal estate tax deficiency and that respondent did not make an assessment against the estate. Petitioners therefore argue that respondent failed to make reasonable efforts to collect the delinquent taxes from the estate prior to attempting to collect from the transferees pursuant to section 6901(a).

Where a transferor is insolvent and efforts to collect delinquent taxes from the transferor would be futile, respondent is not required to send a notice of deficiency to the transferor or to make an assessment against the transferor prior to collecting delinquent taxes from transferees. *California Iron Yards Corp. v. Commissioner,* 82 F.2d 776, 779 (9th Cir. 1936); *Flynn v. Commissioner,* 77 F.2d 180, 183 (5th Cir. 1935); *City Nat. Bank v. Commissioner,* 55 F.2d 1073, 1073-1074 (5th Cir. 1932); *Kuckenberg v. Commissioner,* 35 T.C. 473, 483 (1960), modified on other points 309 F.2d 202 (9th Cir. 1962); *Park & Tilford v. Commissioner,* 43 B.T.A. 348, 382-383 (1941); *Gideon-Anderson Co. v. Commissioner,* 20 B.T.A. 106, 110 (1930); 14 J. Mertens, Law of Federal Income Taxation, sec. 53.31, pp. 83-84 (1987).

Petitioner relies on *Brafman v. United States,* 384 F.2d 863 (5th Cir. 1967), which arguably can be read as holding, that respondent's failure to make a valid, timely assessment against a transferor prevents respondent from collecting delinquent taxes from a transferee. In that case, however, the statute of limitations on assessing the taxes against the transferee under section 6901(c)(1) had expired in 1957,[3] and the Fifth Circuit did not consider whether the transferee would have been liable had respondent sent to the transferee a timely notice of transferee liability, as respondent did in the instant case. *Brafman* is distinguishable and does not apply where a timely notice of transferee liability is mailed to the alleged transferee under section 6901(c)(1).[4]

---

[3]In *Brafman v. United States,* 384 F.2d 863 (5th Cir. 1967), the statute of limitations on assessing the estate under the predecessor of sec. 6501 expired at the end of 1956. Therefore, the statute of limitations on asserting transferee liability under the predecessor of sec. 6901(c)(1) would have expired 1 year later at the end of 1957.

[4]Sec. 6901(c)(1) provides as follows:

SEC. 6901(c). PERIOD OF LIMITATIONS.—The period of limitations for assessment of any such liability of a transferee or a fiduciary shall be as follows:

(1) INITIAL TRANSFEREE.—In the case of the liability of an initial transferee, within 1 year after the expiration of the period of limitation for assessment against the transferor;

* * * * * * *

Based on the above authorities, it is not necessary to determine whether respondent made an assessment against the estate. We have concluded that decedent's estate was insolvent prior to February 15, 1985, and therefore that respondent was not required to issue a notice of deficiency to or make an assessment against the estate before proceeding against petitioners as transferees.

Petitioners further argue that respondent should have filed a proof of claim in the estate proceedings. It is apparent that the estate was insolvent more than 2 years before respondent issued the notices of transferee liability. After transfer of the four lots to petitioners, any action by respondent to effect collection of the delinquent taxes from the estate would have been futile. *Estate of Miller v. Commissioner*, 42 T.C. 593, 599-600 (1964).

Respondent made reasonable efforts to contact Dr. Gumm and his representatives, to confirm payment of the Illinois death taxes, and to locate undistributed assets of the estate to apply against the estate's Federal estate tax liability. We conclude that respondent made reasonable efforts to collect the $9,018.27 Federal estate tax deficiency at issue in this case prior to proceeding against petitioners under section 6901(a). Respondent has established all of the procedural requirements of transferee liability under section 6901 in order for such liability to be imposed on petitioners.

As explained, section 6901 sets forth a collection procedure to be used by respondent against transferees. Section 6901 does not establish or define a transferee's substantive liability "as a transferee." The existence and extent of liability as a transferee is determined under State law or equity. *Commissioner v. Stern*, 357 U.S. 39, 41-45 (1958); *Berliant v. Commissioner*, 729 F.2d 496, 499 (7th Cir. 1984); *Dillman v. Commissioner*, 64 T.C. 797, 800 (1975); *Ginsberg v. Commissioner*, 35 T.C. 1148 (1961), affd. 305 F.2d 664 (2d Cir. 1962). Thus, Illinois law, where the instant probate estate was administered, must also be analyzed to determine whether petitioners may be held liable, as transferees,

except that if, before the expiration of the period of limitation for the assessment of the liability of the transferee, a court proceeding for the collection of the tax or liability in respect thereof has been begun against the initial transferor or the last preceding transferee, respectively, then the period of limitation for assessment of the liability of the transferee shall expire 1 year after the return of execution in the court proceeding.

for the unpaid taxes of decedent's estate. *Berliant v. Commissioner, supra* at 500.

"As a matter of equity, Illinois has long imposed on estate transferees liability to creditors of the estate." *Berliant v. Commissioner, supra* at 500.[5] An heir is liable for debts of an estate to the extent of the personal and real property received from the estate even where the debts do not accrue until after administration of the estate is closed. *Snydacker v. Swan Land & Cattle Co.*, 154 Ill. 220, 40 N.E. 466, 468 (1895); *Union Trust Co. v. Shoemaker*, 258 Ill. 564, 101 N.E. 1050, 1053 (1913).

Petitioners argue that under Illinois case law the administration of an estate must be closed in order to hold a transferee liable for the tax liabilities of the estate. Petitioners interpret the cases too narrowly. Those cases address contingent liabilities which often do not mature until all assets of an estate are distributed and the estate is closed. A Federal estate tax liability is not a contingent liability. *Magill v. Commissioner*, T.C. Memo. 1982-148, affd. sub nom. *Berliant v. Commissioner*, 729 F.2d 496 (7th Cir. 1984).

In this case, the estate is insolvent and, although administration of the estate is not formally closed, the estate is unlikely to obtain any additional assets. Respondent took appropriate collection action against petitioners. If respondent were required to wait until administration of the estate is closed before proceeding to collect the Federal estate tax liability, the heirs of an estate could prolong administration of the estate beyond the period during which respondent may send a notice of transferee liability.

For the reasons stated, petitioners are liable as transferees of decedent's estate for the $9,018.27 Federal estate tax liability of the estate. Petitioners also are liable for the addition to tax imposed under section 6651(a)(2).

*Decisions will be entered for the respondent.*

---

[5]See also *Burns v. Commissioner*, T.C. Memo. 1989-395.