T.C. Memo. 2015-197

UNITED STATES TAX COURT

WILLIAM J. KARDASH, SR., TRANSFEREE, Petitioner v. COMMISSIONER
OF INTERNAL REVENUE, Respondent[*]

CHARLES K. ROBB, TRANSFEREE, Petitioner v. COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket Nos. 12681-10, 12703-10.          Filed October 6, 2015.

Erica G. Pless and Michael P. Tyson, for petitioner in docket No. 12681-10.

Mitchell I. Horowitz and Qian Wang, for petitioner in docket No. 12703-10.

Sergio Garcia-Pages, Michael S. Kramarz, Timothy L. Smith, and Andrew

Michael Tiktin, for respondent.

---

[*]This opinion supplements our prior opinion Kardash v. Commissioner, T.C.
Memo. 2015-51.

**[\*2]**          SUPPLEMENTAL MEMORANDUM FINDINGS OF
                              FACT AND OPINION


GOEKE, <u>Judge</u>:  This matter is before the Court on petitioners' motions for reconsideration (motions) under Rule 161[1] of our opinion in <u>Kardash v. Commissioner</u>, T.C. Memo. 2015-51.  In <u>Kardash</u> we held, among other things, that respondent established that transfers to petitioners in 2005, 2006, and 2007 were fraudulent under Florida law.  Accordingly, we held that petitioners were liable as transferees for the years 2005, 2006, and 2007 under section 6901(a).  <u>Id.</u> at \*41-\*42.

In motions pursuant to Rule 161, petitioners request the Court to reconsider our prior opinion.  Specifically, petitioners raise two issues:  (1) whether our conclusion that Florida Engineered Construction Products Corp. (FECP) was insolvent at the beginning of 2005 was a substantial error, and (2) whether payments in 2005, 2006, and 2007 were part of a deferred compensation plan.  Mr. Kardash alleges in his motion that we failed to credit against his transferee liability the Federal income tax liabilities paid on the transfers.  Lastly, Mr. Robb alleges that he was never a shareholder of FECP and therefore the transfers could not have

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** been dividends.  Respondent has filed separate objections to petitioners' motions, together with supporting memorandum of law.  We will grant the motions in part but will not alter the result of our prior opinion as described herein.

## FINDINGS OF FACT

We incorporate our findings in Kardash and set forth additional facts for purposes of this opinion.

These cases involve respondent's efforts to collect tax, additions to tax, penalties, and interest assessed against FECP.  FECP owes more than $120 million but cannot pay its full liability.  Petitioners, along with Messrs. Stanton and Hughes, owned all of the stock of FECP and received transfers from the company.  Respondent now seeks to recoup over $5 million of the tax, additions to tax, penalties, and interest from petitioners.

FECP assumed the operations of another Florida corporation known as Cast-Crete Corp. of Florida (Cast-Crete) at the time of FECP's incorporation.

Cast-Crete had in place a document titled "Cast-Crete Compensation Plan" which did not mention deferred compensation.  Pursuant to this document, the excess of any bonus over $25,000 was to be paid to petitioners annually in stock.

**[*4]**  FECP made the following dividend payments to Mr. Kardash during 2005, 2006, and 2007.

| Date | Amount | Date | Amount |
|---|---|---|---|
| 1/18/2005 | $57,500 | 12/28/2005 | $478,745 |
| 4/1/2005 | 75,000 | 1/27/2006 | 115,000 |
| 5/2/2005 | 115,000 | 2/22/2006 | 115,000 |
| 5/27/2005 | 57,500 | 3/27/2006 | 115,000 |
| 6/24/2005 | 57,500 | 4/24/2006 | 115,000 |
| 7/22/2005 | 57,500 | 5/22/2006 | 575,000 |
| 8/24/2005 | 57,500 | 6/28/2006 | 287,500 |
| 9/30/2005 | 57,500 | 9/25/2006 | 345,000 |
| 10/26/2005 | 57,500 | 12/18/2006 | 287,500 |
| 11/17/2005 | 478,745 | 3/23/2007 | 57,500 |

FECP made the following dividend payments to Mr. Robb during 2005, 2006, and 2007.

| Date | Amount | Date | Amount |
|---|---|---|---|
| 1/18/2005 | $7,500 | 12/28/2005 | $62,445 |
| 4/1/2005 | 7,500 | 1/27/2006 | 15,000 |
| 5/2/2005 | 15,000 | 2/22/2006 | 15,000 |
| 5/27/2005 | 7,500 | 3/27/2006 | 15,000 |
| 6/24/2005 | 7,500 | 4/24/2006 | 15,000 |
| 7/22/2005 | 7,500 | 5/22/2006 | 75,000 |

| | | | |
|---|---|---|---|
| [*5] 8/24/2005 | 7,500 | 6/28/2006 | 37,500 |
| 9/30/2005 | 7,500 | 9/25/2006 | 45,000 |
| 10/26/2005 | 7,500 | 12/18/2006 | 37,500 |
| 11/17/2005 | 62,445 | 3/23/2007 | 7,500 |

Respondent's expert, Arlene Aslanian, prepared a report in which she computed the balances due from FECP as a result of its settlement with respondent in a prior consolidated case in our Court. Ms. Aslanian estimated FECP's Federal income tax liabilities, additions to tax, penalties, and interest owed to respondent on the transfer dates in the instant cases. She estimated that FECP owed $34,233,591 on December 28, 2005, and $50,796,640 on January 27, 2006.

Using the market approach, respondent's expert, Dr. Shaked, found that the fair market value of FECP's assets was less than the value of its Federal income tax liabilities, additions to tax, penalties, and interest as of January 27, 2006, resulting in insolvency. Dr. Shaked concluded that FECP remained insolvent through March 23, 2007, as evidenced in the table below:[2]

---

[2]Dr. Shaked used Ms. Aslanian's Federal tax estimates with the addition of FECP's State tax liability estimates.

| [*6] Valuation date | Concluded business enterprise value | Total liabilities | Equity value |
|---|---|---|---|
| 12/28/2005 | $48,780,526 | $41,938,074 | $6,842,453 |
| 1/27/2006 | 48,914,636 | 61,223,151 | (12,308,515) |
| 2/22/2006 | 58,237,469 | 61,395,247 | (3,157,777) |
| 3/27/2006 | 60,828,488 | 61,649,533 | (821,044) |
| 4/24/2006 | 56,800,441 | 64,763,979 | (7,963,538) |
| 5/22/2006 | 53,664,558 | 65,292,704 | (11,628,146) |
| 6/28/2006 | 51,727,219 | 65,910,449 | (14,183,230) |
| 9/25/2006 | 51,243,857 | 75,703,818 | (24,459,962) |
| 12/18/2006 | 54,686,810 | 76,843,140 | (22,156,330) |
| 3/23/2007 | 46,877,634 | 99,669,194 | (52,791,560) |

Below are the amounts of total dividends that FECP transferred to Messers. Robb, Kardash, Stanton, and Hughes during 2005, 2006, and 2007.

| Shareholder | 2005 | 2006 | 2007 |
|---|---|---|---|
| Charles K. Robb | $199,890 | $255,000 | $7,500 |
| William J. Kardash, Sr. | 1,549,990 | 1,955,000 | 57,500 |
| John Stanton | 7,999,500 | 10,200,000 | 300,000 |
| Ralph Hughes | 7,999,500 | 10,200,000 | 300,000 |
| Total | 17,748,880 | 22,610,000 | 665,000 |

Petitioners timely filed their Rule 161 motions asking us to reconsider and modify our opinion in Kardash v. Commissioner, T.C. Memo. 2015-51.

**[\*7]**                                                OPINION

Reconsideration under Rule 161 serves the limited purpose of correcting substantial errors of fact or law and allows the introduction of newly discovered evidence that the moving party could not have introduced, by the exercise of due diligence, in the prior proceeding.  Estate of Quick v. Commissioner, 110 T.C. 440, 441 (1998).  We usually do not grant motions for reconsideration absent a showing of unusual circumstances or substantial error.  CWT Farms, Inc. v. Commissioner, 79 T.C. 1054, 1057 (1982), aff'd, 755 F.2d 790 (11th Cir. 1985).  Petitioners have raised valid concerns as to the valuations of FECP and the Federal income tax liabilities for the years at issue, specifically 2005.

The burden of proof as to transferee liability is on the Commissioner.  Sec. 6902(a); Rule 142(d).  We find that respondent proved the transfers in 2005 were fraudulent.

Petitioners contend that the Court erred in valuing FECP's solvency by relying on petitioners' expert's high estimates of FECP's tax liabilities instead of the Federal income tax liabilities as stipulated by the parties.  Although petitioners did not initially agree to and stipulate the liabilities that respondent's expert determined, we agree with petitioners that respondent's estimates should have been used.  Moreover, petitioners point out that the Court erred when stating Dr.

[*8] Shaked's business enterprise value for the valuation date December 28, 2005. The stated estimate was $57,311,606, but the actual estimate was $58,311,606, undervaluing Dr. Shaked's estimate.

Petitioners contend that with this correction, FECP would be solvent for the 2005 tax year. We agree, but for the sake of clarity, we deem it necessary to discuss our valuation in greater detail than we did previously.

"'Valuation is * * * necessarily an approximation.' It is an inexact science at best, capable of resolution only by 'Solomon-like' pronouncements." Stanley Works & Subs. v. Commissioner, 87 T.C. 389, 408 (1986) (alteration in original) (quoting Silverman v. Commissioner, 538 F.2d 927, 933 (2d Cir. 1976), aff'g T.C. Memo. 1974-285). "[F]inding market value is, after all, something for judgment, experience; and reason on the pa[r]t of the trier, and does not lend itself to dissection and separate evaluation." Id. (quoting Colonial Fabrics v. Commissioner, 202 F.2d 105, 107 (2d Cir. 1953)). "[W]e are not bound by the opinion of any expert witness and will accept or reject expert testimony in the exercise of sound judgment." Estate of Newhouse v. Commissioner, 94 T.C. 193, 217 (1990).

We rely largely on Dr. Shaked's market multiple valuation to determine the solvency of FECP. Although Dr. Shaked recommends the use of the asset

**[\*9]** accumulation value, we disagree. The asset accumulation value does not take FECP's intangibles into account. We believe that FECP had some intangible assets with value and therefore rely on the market multiple valuation that values FECP as a going concern. From Dr. Shaked's market multiple valuation it is clear that FECP had a negative equity value of $12,308,515 on the transfer date, January 27, 2006, and it remained insolvent through March 23, 2007. Thus, we modify our initial finding that FECP became insolvent in 2005 and instead find that FECP became insolvent starting January 27, 2006, and remained insolvent for 2006 and 2007.

Petitioners argue that we should reconsider our opinion to find them not liable for the 2005 transfers because FECP was solvent at the time of the transfers. Under Florida's Uniform Fraudulent Transfer Act (FUFTA), a transfer is fraudulent if the debtor did not receive reasonably equivalent value and the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer. Fla. Stat. Ann. sec. 726.106(1) (West 2012). "Although the language of the UFTA [Uniform Fraudulent Transfer Act] speaks in terms of a single transfer of property, a series of transfers may also be found to be fraudulent." Berland v.

**[\*10]** <u>Mussa (In re Mussa)</u>, 215 B.R. 158, 169 (Bankr. N.D. Ill. 1997).[3] Further, we have held that insolvency may be measured after a series of related transfers which in total leave the transferor insolvent. <u>See</u> <u>Botz v. Helvering</u>, 134 F.2d 538, 543 (8th Cir. 1943), <u>aff'g</u> 45 B.T.A. 970 (1941); <u>see also</u> <u>Hagaman v. Commissioner</u>, 100 T.C. 180 (1993); <u>Gumm v. Commissioner</u>, 93 T.C. 475, 480 (1989), <u>aff'd</u> <u>without published opinion</u>, 933 F.2d 1014 (9th Cir. 1991); <u>Leach v.</u> <u>Commissioner</u>, 21 T.C. 70, 75 (1953).

As discussed in <u>Kardash v. Commissioner</u>, at \*28-\*31, we held that the 2003 and 2004 transfers were for reasonably equivalent value and were different in nature from the transfers in 2005, 2006, and 2007. Although we now find that FECP was solvent during 2005, the transfers were still constructively fraudulent because they were part of a series of transactions that led to the insolvency of FECP. Therefore, we find that the transfers beginning in 2005 were fraudulent because the transfers were not for reasonably equivalent value and FECP became insolvent as a result of the series of transfers.

---

[3]Although the current cases are subject to Florida law, the Illinois case is instructive in interpreting the Florida statute. Illinois, as well as Florida, has adopted the Uniform Fraudulent Transfer Act (UFTA). 740 ILCS 160/1 to 160/12 (West 2010). The general purpose of UFTA and FUFTA is to make the law uniform among the States enacting it. Fla. Stat. Ann. sec. 726.112 (West 2012); UFTA sec. 11, 7A (Part II), U.L.A. 203 (2006).

**[*11]** Petitioners argue that the Court erred by not finding that the payments in 2005, 2006, and 2007 were part of a deferred compensation plan. The document that petitioners rely on makes no reference to a "Deferred Compensation Plan". Moreover, the document petitioners refer to states that petitioners would be entitled to cash compensation "not to exceed $25,000 per month" and "paid annually in stock" to the extent petitioners' compensation exceeds the $25,000 per month. The payments exceeding $25,000 were, however, made in cash, not stock, and therefore could not have been pursuant to the purported deferred compensation plan. Moreover, FECP reported the payments as dividends on Forms 1099-DIV, Dividends and Distributions, and petitioners reported the payments as dividends on their individual tax returns.

Mr. Kardash alleges that he is entitled to credits against his transferee liability for taxes paid on transfers as reported dividends. Mr. Kardash argues that the Government would receive an inequitable windfall if we refused to credit him with the amounts of tax he paid on the transferred amounts in 2005, 2006, and 2007. Reconsideration under Rule 161 is not the proper avenue; section 1341 is the appropriate remedy for Mr. Kardash in this situation. See Delpit v. Commissioner, T.C. Memo. 1992-297 (citing Maynard Hosp., Inc. v. Commissioner, 54 T.C. 1675 (1970)).

**[*12]** Mr. Robb argues that the transfers could not have been dividends because he was never a stockholder of FECP but instead received shares of Cast-Crete stock on December 30, 2004. He also argues that these shares were worthless because we found FECP insolvent as of 2005. Under either Florida's "De Facto Merger" doctrine, see 300 Pine Island Assocs. v. Steven L. Cohen & Assocs., 547 So. 2d 255, 256 (Fla. Dist. Ct. App. 1989) (citing Arnold Graphics Indus., Inc. v. Indep. Agent Ctr., Inc., 775 F.2d 38 (2d Cir. 1985)) or its "Continuation of Business" doctrine, see Amjad Munim, M.D., P.A. v. Azar, 648 So. 2d 145, 154 (Fla. Dist. Ct. App. 1994) (citing Bud Antle, Inc. v. E. Foods, Inc., 758 F.2d 1451, 1458 (11th Cir. 1985)), the acts committed, transactions entered into, and records kept by Cast-Crete would be treated as acts, transactions, and records of FECP. The shares issued in Cast-Crete's name will be treated as issued under FECP's name.

Petitioners' further arguments are merely a rehash of legal arguments from their briefs, and a motion for reconsideration is not the appropriate forum for arguments this Court has previously rejected. See Estate of Quick v. Commissioner, 110 T.C. at 441-442.

**[\*13]** In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order will be issued, and decisions will be entered under Rule 155</u>.