T.C. Memo. 2000-377

UNITED STATES TAX COURT

DIXIE VAN AERNAM, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8972-97.                    Filed December 14, 2000.

R claims that P is liable as a transferee of H
for deficiencies in H's income taxes.  P and H
contracted to buy property.  P and two others
contributed to the purchase price.  Deed number one
conveyed the property from the seller to P, alone.
Deed number two conveyed the property from the seller
to H, alone.  Subsequently, by deed number three, H
conveyed the property to P, alone.  R claims that deed
number three was a fraudulent transfer under the
Uniform Fraudulent Transfer Act, Fla. Stat. Ann. secs.
726.101 through 726.112 (West 2000).  R relies
exclusively on the stipulated facts to establish the
elements of a fraudulent transfer.  P's testimony
contradicts inferences to be drawn from the stipulated
facts.  R has failed to carry his burden of proof that
the transfer was fraudulent.  <u>Held</u>:  P has no
transferee liability under sec. 6901(a), I.R.C.

Dixie Van Aernam, pro se.

Michael D. Zima, for respondent.

MEMORANDUM OPINION

HALPERN, Judge:  By notice of transferee liability dated February 7, 1997, respondent claims that petitioner is liable as a transferee of property of Steven W. Van Aernam (Steven) for deficiencies in Steven's income taxes for 1988 through 1990.[1] Since respondent believes that, at the time of transfer, the value of property transferred by Steven to petitioner was $15,000, respondent limits his claim to that amount, less $10 paid by petitioner for the property, plus interest.  The sole issue for decision is whether petitioner is liable in the amount of respondent's claim as a transferee of property of Steven.

Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Some facts have been stipulated and are so found.  The stipulation of facts, with accompanying exhibits, is incorporated herein by this reference.  We need find few facts in addition to those stipulated and will not, therefore, separately set forth our findings of fact.  We will make additional findings of fact

---

[1]  Respondent determined deficiencies, additions to tax, and penalties totaling $50,539 with respect to Steven W. Van Aernam's (Steven's) Federal income tax liabilities for such years.

as we proceed.  Our discussion under the heading "Background" is drawn principally from the facts and exhibits stipulated by the parties.

Background

Petitioner resided in Daytona Beach, Florida, at the time the petition was filed.

Petitioner is married to Steven (together, the Van Aernams), and they have been married since December 27, 1979.

The Pelican Avenue property (sometimes, the property) is a parcel of real property located in Volusia County, Florida.  As relevant to this case, the property was first owned by Sandra L. Archer, who, sometime in 1993, offered the property for sale. Phillip Niles, a real estate broker representing Steven, contacted Ms. Archer and informed her that the Van Aernams were interested in buying the property and building a house upon it. By a document entitled "Contract for Sale and Purchase" (the sale contract), Ms. Archer agreed to sell, and the Van Aernams agreed to buy, the property.  The sale contract describes the property as a vacant lot.  The sale contract provides that the purchase price (purchase price) is $14,000, $5,000 of which is to be deposited in escrow with a broker (Thomas Archer), and the remaining $9,000 of which is to be paid within 30 days of the contract.  Ms. Archer and the Van Aernams executed the sale contract on October 25 and 26, 1993, respectively.  The parties

have stipulated the following with respect to payment of the purchase price:

> 10.  Pursuant to the * * * [sale contract], $5,000.00 in cash was given to Thomas Archer, a real estate broker and husband of Sandra L. Archer, to hold in an escrow account.
>
> 11.  On December 23, 1993, an additional $9,000.00 was paid to Sandra L. Archer via a cashier's check purchased by Mr. John K. Richards.

Mr. Niles, the broker who represented Steven, wrote a letter to respondent's counsel in this case.  That letter, dated January 18, 1999, is headed "STATEMENT OF FACTS", and, among other things, it states:

> I HAD SANDRA ARCHER SIGN CONTRACT ON OCT. 25, 1993 AS THE SELLER AND MR. AND MRS. VAN AERNAM SIGNED THE FOLLOWING DAY, OCT. 26, 1993 AS THE BUYERS.  AT THAT TIME MR. VAN AERNAM WENT TO MRS. VAN AERNAM WHO WAS THEN RESIDING AT A SEPARATE RESIDENCE.  WE OBTAINED THE DEPOSIT IN CASH FROM HER AND SHE SIGNED CONTRACT AND INITIALED CHANGES MADE IN THE CONTRACTUAL TERMS ON THE CONTRACT.  WE THEN LEFT WITH THE DEPOSIT AND IT WAS DELIVERED TO TOM ARCHER'S ESCROW ACCOUNT WHO IS A BROKER AND HUSBAND OF THE SELLER.

On May 13, 1994, Steven was arrested and charged with trafficking in cocaine, possession of cannabis over 20 grams (together, the drug charges), and the unlawful possession of a firearm by a convicted felon.

There are in evidence copies of two papers purporting to convey the property from Ms. Archer:  The first is entitled "Quit Claim Deed" (the first quitclaim deed), executed on May 21, 1994, and conveying the property to petitioner.  The second is entitled

"Warranty Deed" (the first warranty deed), executed on July 15, 1994, and conveying the property to Steven. Both the first quitclaim deed and the first warranty deed were recorded with the Clerk of Courts, Volusia County, Florida (sometimes, the Clerk). The first warranty deed was recorded first, on August 17, 1994, and the first quitclaim deed was recorded second, on September 26, 1994.

On June 10, 1994, Volusia County filed a Notice of Lis Pendens against the Van Aernams concerning their property located at 1700 Ridge Avenue, Holly Hill, Florida.

On July 25, 1995, Steven executed a quitclaim deed (the second quitclaim deed) conveying the property to petitioner. The second quitclaim deed was recorded with the Clerk on August 3, 1995.

On July 25, 1995, Steven was under indictment on the drug charges.

On September 28, 1995, Steven, having been convicted of the drug charges, was sentenced to a 15-year term of imprisonment and fined $250,000.

The following is the text of a letter dated November 15, 1995, from David C. Robinson, Attorney at Law, to Steven, who was then in prison (enclosures omitted):

    RE:  Pelican Avenue Vacant Lot

    Dear Steve;

        John "Thumper" Richards has asked me to assist
    him in recovering some of the money he invested in
    the above referenced property.

        Enclosed herewith is a copy of the $8,000.00
    check representing his portion of the purchase
    price.  The assessed value is $13,292.00 with the
    actual value being somewhat more.

        I have enclosed a Quit Claim Deed for your
    (consideration) execution.

        Thumper would like to purchase your interest for
    a "fair" (?) amount.  This transfer could be
    accomplished by you sending the executed Quit Claim
    Deed to your wife; then Thumper could give her a
    cashier's check in exchange for the deed.

        Please call (collect) either myself or Thumper
    (672-1654) to discuss this further.

                            Sincerely,


                            _____/s/_____
                            DAVID C. ROBINSON
                            ATTORNEY AT LAW


    On January 2, 1996, Sun Beach Investments, Inc. purchased

the property from petitioner for $15,000.

    By notice of deficiency dated December 19, 1996,

respondent determined deficiencies and additions to tax totaling

$63,817 with respect to Steven's Federal income tax liabilities

for 1991 through 1994.

Discussion

I.  Introduction

As stated, we must determine whether petitioner is liable for the amount of respondent's claim as a transferee of property of Steven.

Section 6901 addresses the liability of a transferee of property (transferee) for certain taxes, including income taxes, of the transferor of such property (transferor).  Pertinent provisions of section 6901 are set forth in the margin.[2]

---

[2]  SEC. 6901.  TRANSFERRED ASSETS.

(a)  Method of Collection.  The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred:

(1) Income, Estate, and Gift Taxes.--

(A)  Transferees.  The liability, at law or in equity, of a transferee of property --

(i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),

*    *    *    *    *    *    *

(b) Liability.--Any liability referred to in subsection (a) may be either as to the amount of tax shown on a return or as to any deficiency or underpayment of any tax.

*    *    *    *    *    *    *

(continued...)

Section 6901 imposes no liability on any transferee; rather, subsection (a) thereof merely provides a procedure by which respondent may collect from a transferee unpaid taxes owed by the transferor if a basis exists under applicable State law or equity for holding the transferee liable. See Commissioner v. Stern, 357 U.S. 39, 42-47 (1958); Hagaman v. Commissioner, 100 T.C. 180, 183 (1993); Gumm v. Commissioner, 93 T.C. 475, 479 (1989), affd. without published opinion 933 F.2d 1014 (9th Cir. 1991). The burden of proof as to transferee liability is on respondent. See Rule 142(d); see also sec. 6902(a).[3]

## II.  Elements of Transferee Liability

Respondent argues that the law of Florida governs whether petitioner is liable as a transferee of Steven. Petitioner does not disagree, and we look to the law of Florida to make that determination. Respondent directs us to the Uniform Fraudulent

---

[2](...continued)
    (h) Definition of Transferee.--As used in this section, the term "transferee" includes donee * * *

[3]  Respondent does not bear the burden of proving that the transferor is liable for the tax. See Rule 142(d); see also sec. 6902(a). Petitioner assigned error to respondent's attribution to her of transferee liability. In support of petitioner's assignment that respondent erred in attributing to her transferee liability, petitioner avers, among other things, that there are no deficiencies in Steven's taxes. Petitioner has offered no evidence to support that averment, however, and she has failed to address it on brief. We, conclude, therefore, that she concedes the deficiencies on which respondent's notice of liability is based. See Bernstein v. Commissioner, 22 T.C. 1146, 1152 (1954), affd. 230 F.2d 603 (2d Cir. 1956); Lime Cola Co. v. Commissioner, 22 T.C. 593, 606 (1954); Roberts v. Commissioner, T.C. Memo. 1996-225.

Transfer Act (UFTA), Fla. Stat. Ann. secs. 726.101 through 726.112 (West 2000) (hereafter Fla. Stat. sec. 726.xxx). In particular, respondent directs us to Fla. Stat. secs. 726.105(1) and 726.106(1). In pertinent part, Fla. Stat. sec. 726.105(1) provides that a transfer is fraudulent as to a creditor if the transfer is made with actual intent to defraud the creditor or without the transferor receiving fair consideration in return, if the transferor knew, or should have known, that he would be unable to pay his debts as they became due.[4] In pertinent part,

---

[4] Fla. Stat. Sec. 726.105 is entitled "Transfers fraudulent as to present and future creditors". Subsection (1) thereof provides as follows:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Subsec. (2) thereof, which is not reproduced, sets forth a number of factors that, among others, may be considered in
                                                    (continued...)

Fla. Stat. sec. 726.106(1) provides that a transfer is fraudulent as to a creditor if the transferor is or, as a result of the transfer, will become insolvent and the transferor does not receive fair consideration in return.[5]  In pertinent part, for purposes of the UFTA, the term "insolvency" is defined as follows:

> (1)  A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at fair valuation.

> (2)  A debtor who is generally not paying his or her debts as they become due is presumed to be insolvent.

Fla. Stat. sec. 726.103.  Under the UFTA, if a transfer is fraudulent as to a creditor, the creditor may, among other remedies (1) obtain avoidance of the transfer to the extent

---

[4](...continued) determining actual intent under subsec. (1)(a) thereof.  We describe and discuss some of those factors infra in sec. IV.D.3.b.

Since respondent does not rely on Fla. Stat. sec. 726.105(1)(b)1., we disregard it in the discussion that follows.

[5]  Fla. Stat. sec. 726.106 is entitled "Transfers fraudulent as to present creditors".  Subsec. (1) thereof provides as follows:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

necessary to satisfy his claim or (2) recover judgment against the transferee for the lesser of the value of the asset transferred or the amount of his claim. See. Fla. Stat. secs. 726.108(1)(a) and 726.109(2), respectively.

III. Arguments of the Parties

A. Respondent's Argument

Respondent proposes that we find: "As to third party creditors of Steven W. Van Aernam, he owned a fee simple interest in the Pelican Avenue property as of July 25, 1995. [He] * * * transferred his fee simple in the Pelican Avenue Property to petitioner * * * on July 25, 1995." Respondent argues that such transfer of the Pelican Avenue property by Steven to petitioner was fraudulent with respect to respondent under either Fla. Stat. sec. 726.105(1) or sec. 726.106(1). As a result, respondent asks that, in effect, we grant respondent a judgment in the amount of $14,990, the value of the property (which value is less than the amount of respondent's claim), plus interest.

B. Petitioner's Argument

Petitioner responds that, in fact, Steven never owned an interest in the Pelican Avenue property. She proposes that we find that, initially, she, not Steven, acquired the Pelican Avenue property from the seller (Sandra L. Archer). She claims that the first warranty deed (from Ms. Archer to Steven) was in error, and the second quitclaim deed (from Steven to her) was

given by Steven only to undo the mistake of the first warranty deed.  She concludes:  "[T]here is no basis in fact for the assertion of Transferee liability against [her]".

IV.  Discussion

A.  Introduction

1.  Petitioner's Defense

Petitioner does not deny that Steven transferred the property to her.  We interpret petitioner's argument as interposing a defense to respondent's claim of a fraudulent transfer; i.e., she, not Steven, was the beneficial owner of the property, and, if Steven held any interest in the property at all, he held it on her behalf, and he conveyed it to her by the second quitclaim deed.  See Bender v. General Elec. Supply Corp., 117 Fla. 275, 157 So. 573 (1934) (fraud on creditor of husband not presumed where it is shown that property transferred to wife was purchased with money that was the separate property of the wife, husband who took title held it in trust for wife, and wife was, at all times, beneficial owner of property).  Petitioner need not rely on her defense (and we will not further discuss it), since respondent has failed to carry his burden of proving a fraudulent transfer.

## 2. Respondent's Burden

To establish a fraudulent transfer, respondent must prove that there was a transfer of property from Steven to petitioner and, with respect to respondent, that transfer was fraudulent, all within the meaning of Fla. Stat. sec. 726.105(1) or sec. 726.106(1).

## B. Evidence

Besides the pleadings, the record in this case consists principally of the stipulation of facts and a transcript of the testimonies of petitioner and a witness called by respondent to introduce records of assessments and payments pertaining to Steven's taxable years 1988 through 1990. We have set forth relevant portions of the stipulation of facts under the heading "Background". In presenting his case in chief, respondent called only petitioner. He asked her whether she could explain the notice of lis pendens filed by Volusia County. Petitioner could not, and respondent asked her no further questions. He then rested his case. Petitioner called no witnesses, but she testified on her own behalf. In pertinent part, she testified as follows: Since 1989, she has lived by herself, with her two children. At the time of the acquisition of the Pelican Avenue property, she and Steven "were going through a horrible divorce". She paid Thomas Archer the funds deposited in escrow pursuant to the sale contract. Those funds were derived from $2,000 received

from her father-in-law and $3,500 from insurance proceeds and an inheritance received by her.[6] John Richards paid $9,000 towards the purchase price. He was a builder, and the plan was to build on the property. John Richards was supposed to get his money returned "at whatever the profit was". Notwithstanding that there are no documents evidencing Mr. Richard's participation in the purchase of the property, she believed that she was obligated to repay him, and she has asked him to hold off collecting until she straightens things out. She received the first quitclaim deed while Steven was in jail: "Steve was in jail at that time and I went to get it. It was going to be a hard mess all around. I was just glad to receive it." Notwithstanding the sale contract, she was worried that she would lose the money she had invested in the property since there had been no closing of the sale. Steven obtained the first warranty deed in order to deprive her of her interest in the property.

---

[6] We are aware that the total of those two amounts is $5,500, which exceeds a stipulation that $5,000 was deposited in escrow pursuant to the sale contract. We cannot explain that discrepancy or the discrepancy between the stipulation that an additional $9,000 was paid to Sandra L. Archer by a cashier's check purchased by John K. Richards and the copy of an $8,000 check attached to the letter dated Nov. 15, 1995, from Mr. Richard's attorney to Steven. We will assume that the deposit made by petitioner was $5,000 and the amount paid by John Richards was $9,000, which adds up to the $14,000 purchase price for the Pelican Avenue property specified in the contract of sale.

C. <u>Transfer</u>

A necessary element of both Fla. Stat. secs. 726.105(1) and 726.106(1) is a transfer of property by the debtor. The second quitclaim deed is prima facie evidence of a transfer of the Pelican Avenue property from Steven to petitioner on July 25, 1995 (the transfer and the transfer date, respectively). See 19 Fla. Jur. 2d Deeds sec. 1 (1998) ("'Deed'" is synonymous with 'conveyance.'"). But cf. <u>Barr v. Schlarb</u>, 314 So. 2d 609, 611 (Fla. Dist. Ct. App. 1975) (deed may signify mortgage). Petitioner having failed to introduce contradictory evidence, we find accordingly.

D. <u>Fraud With Respect to Respondent</u>

1. <u>Introduction</u>

To prove that, with respect to the United States, the transfer was fraudulent, respondent must prove that it was fraudulent within the meaning of either Fla. Stat. sec. 726.105(1) or sec. 726.106(1). Realistically (based on the record before us), for respondent to prove fraud within the meaning of Fla. Stat. sec. 726.105(1), respondent must show Steven's actual fraudulent intent or his unreasonable belief that he could pay his debts as they came due. See <u>supra</u> note 4. For respondent to prove fraud within the meaning of Fla. Stat. sec. 726.106(1), respondent must show Steven's insolvency. See <u>supra</u> note 5. By failing to call any witnesses in support of his case

in chief, except for petitioner, who was of no help to respondent, respondent has limited himself to the stipulated facts, and certain inferences that the UFTA allows us to draw, to carry his burden of proof. While not free from all doubt with respect to Steven's intent or belief, the stipulated facts (and inferences we may draw from those facts), when considered in light of petitioner's testimony, fail to persuade us that Steven had the necessary fraudulent intent or that Steven unreasonably believed that he could pay his debts as they came due. See Fla. Stat. sec. 726.105(1)(a) and (b)2. Also, respondent has failed to persuade us of Steven's insolvency. Since certain conclusions best reached in our consideration of Fla. Stat. sec. 726.106(1) are also necessary to our consideration of Fla. Stat. sec. 726.105(1), we will examine such latter section first.

### 2. Fla. Stat. Sec. 726.106

#### a. Introduction

To prevail under Fla. Stat. sec. 726.106, respondent must show, among other things, either that, at the time of the transfer, Steven was insolvent or, as a result of the transfer, he became insolvent. See Fla. Stat. sec. 726.106(1). Respondent has failed to make either showing.

#### b. Fla. Stat. Sec. 726.103(1)

Under Fla. Stat. sec. 726.103(1), a debtor is insolvent if the sum of his debts is greater than the fair value of all of his

assets (balance sheet insolvency).  The record is adequate for us to find that, on the transfer date, Steven had substantial liabilities.[7]  Respondent has failed to propose any finding of fact with respect to the fair value of Steven's assets.  On brief, respondent asks us conclude that Steven was insolvent on the transfer date because, on that date:  "Steven W. Van Aernam's income stream had dwindled to a trickle or had ceased altogether, since he had been convicted on two federal crimes and was about to be sentenced to a prison term."  Respondent states: "Respondent has been unable to locate assets in Steven W. Van Aernam's name whose value approaches his income tax liabilities".

Petitioner credibly testified that Steven had assets on the transfer date and afterwards:  "[H]e had plenty of tools and equipment, money to give his divorce lawyer, money to give his lawyer at that time and then afterwards, even after he went into jail--that he gave money to have his appeal made, so I believe that he definitely has money out there."

Respondent has failed to carry his burden of proving Steven's balance sheet insolvency.  Respondent's statement on brief that he has been unable to locate assets in Steven's name, unsupported by any testimony or other evidence concerning his search, carries no weight.  Respondent's claim that Steven's income may have slowed to a trickle or stopped is also of no

_____

[7]  Respondent claims that Steven owed approximately $364,000 to the State of Florida and the Internal Revenue Service.

weight, since unsupported by evidence.  Petitioner's testimony that Steven had money contradicts respondent's conclusion that Steven had no income or assets.  On brief, respondent states that Steven is currently serving the third year of a 15-year prison sentence.  Respondent has not shown any effort to obtain Steven's testimony as to the extent of his assets.  Respondent has failed to carry his burden of proving that Steven was insolvent within the meaning of Fla. Stat. sec. 726.103(1) because he has failed to establish the fair value of Steven's assets.  Respondent having failed to do that, we cannot say that Steven was insolvent within the meaning of Fla. Stat. sec. 726.103(1).

   c. <u>Fla. Stat. Sec. 726.103(2)</u>

 Under Fla. Stat. sec. 726.103(2), a debtor is presumed to be insolvent if he is generally not paying his debts as they become due.  Respondent has failed to propose any finding with respect to whether Steven was generally paying his debts as they came due.  Respondent's argument on brief is that Steven "was unable to pay his debts as they became due, since his assets were of limited value and his income producing potential had dissipated."  That argument has no more traction here than it did with respect to Fla. Stat. sec. 726.103(1).  While, on the transfer date, Steven may have been liable for his tax bills, respondent has failed to prove that, generally, he was not paying his debts as they came due.

d.  Conclusion

Respondent has failed to prove that, with respect to the United States, Steven made a fraudulent transfer within the meaning of Fla. Stat. sec. 726.106(1).

3.  Fla. Stat. Sec. 726.105

a.  Introduction

To prevail under Fla. Stat. sec. 726.105(1), respondent must show that the transfer was made either with (1) fraudulent intent or (2) without receiving a reasonably equivalent value in exchange, and the debtor knew, or should have known, his debts would be beyond his ability to pay as they fell due.  Respondent has failed to make either showing.

b.  Fla. Stat. Sec. 726.105(1)(a)

To prevail under Fla. Stat. sec. 726.105(1)(a), respondent must show, among other things, that the transfer was made with "actual intent to hinder, delay, or defraud any creditor of the debtor".  Fla. Stat. sec. 726.105(2) provides that, in determining actual intent, consideration may be given to (but is not limited to) several factors.  Respondent directs our attention to the following of those factors:

1.  The transfer was to an insider (including a relative).

2.  Before the transfer was made, the debtor had been sued or threatened with suit.

3.  The transfer was of substantially all the debtor's assets.

4.  The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred.

5.  The debtor was insolvent or became insolvent shortly after the transfer was made.

6.  The transfer occurred shortly before or after a substantial debt was incurred.

Fla. Stat. sec. 726.105(2)(a), (d), (e), (h), (i), (j), respectively.  An additional factor is whether the transfer was disclosed or concealed.  See Fla. Stat. sec. 726.105(2)(c).

We can draw no inferences from the third and fifth factors, since respondent has failed to prove that the transfer was of substantially all of Steven's assets or he was insolvent. In petitioner's favor is the fact that the transfer was disclosed (a public record was made on August 3, 1995).  The remaining four factors (the four factors), considered only in light of the stipulated facts, could support a finding that Steven's actual intent was to defraud any creditor:  The transfer was to Steven's wife, after he had been indicted on the drug charges, shortly before Steven incurred a large fine, and apparently without Steven's receiving consideration of reasonably equivalent value. The stipulated facts, however, are not the only light in which to consider the four factors.  There is also petitioner's testimony.

Considering petitioner's testimony together with the stipulated facts, we surmise that the following led up to petitioner's sale of the Pelican Avenue property (altogether, the

Pelican Avenue transaction):  Steven found the Pelican Avenue property.  He, along with John Richards, intended to improve it by building a house upon it, which they would then sell.  John Richards and Steven's father contributed $9,000 and $2,000, respectively, towards the purchase price.  Steven convinced petitioner to contribute $3,000 or $3,500.  Steven made no cash contribution.  The contract of sale was between Sandra Archer, as seller, and the Van Aernams, as buyers.  When Steven was arrested, the purchase price had been paid, and the time specified in the sale contract to close the purchase had expired, but no closing had taken place.  Petitioner, worrying that she would lose her money, asked for a deed, and, on May 21, 1994, she obtained the first quitclaim deed from Ms. Archer.

On July 15, 1994, Steven obtained the first warranty deed from Ms. Archer.  On July 25, 1995, Steven conveyed the property back to petitioner by the second quitclaim deed.  By letter dated November 15, 1995, John Richards, by his attorney, suggested that Steven convey the property to Mr. Richards, who would purchase Steven's interest for a "fair" price.  The property was subsequently sold for $15,000.

The record here leaves much to be desired.[8]  Nevertheless, stipulated facts and exhibits confirm petitioner's testimony that the deposit was received from her, John Richards paid a portion of the purchase price of the property, and none of the purchase price came from Steven.  We think the following to be fair inferences from the record, and we so find:  Petitioner contributed her own money to the Pelican Avenue transaction.  She contributed that money on her own behalf; she did not make a loan to Steven.  John Richards and petitioner's father-in-law likewise contributed their own moneys in their own interest (and not as loans to Steven).  Steven contributed no money, but, nonetheless,

---

[8]  In part, that may be due to the fact that respondent waited until the start of the trial to add Fla. Stat. sec. 726.105(1) (actual intent to defraud or lack of fair consideration) to Fla. Stat. sec. 726.106(1) (insolvency) as the basis for his claim that the Pelican Avenue property was fraudulently transferred to petitioner.  While respondent must have believed that he could prove fraudulent intent from the stipulated facts, petitioner appears to have been caught off guard by that addition to respondent's claim.  Our review of petitioner's direct testimony convinces us that she had given no consideration to the relationship between the stipulated facts and the elements of the fraudulent intent claim.  No doubt, that is because, until the start of the trial, respondent's trial memorandum had not informed her of that claim.  Her direct testimony was principally in rebuttal to the claim that Steven was insolvent.  Indeed, much of the testimony from which we construct the Pelican Avenue transaction came during respondent's cross-examination of petitioner.  In part, we accord her testimony credibility because of its spontaneous nature.

on account of finding the property, he would share in the profit from developing the property. The arrangement among petitioner, Steven, petitioner's father-in-law, and John Richards to acquire, improve, and sell the property was in the nature of a joint venture (the joint venture). The Van Aernams were to take title to the property as trustees or, in some other capacity, as custodians of title on behalf of the joint venturers. The joint venture plan was abandoned sometime after Steven's indictment. In recognition of such abandonment, and anticipating John Richards' efforts to recover his investment in the joint venture, Steven conveyed the property to petitioner by the second quitclaim deed. Petitioner received the property from Steven in recognition of her own interest and subject to the interests of John Richards and her father-in-law (and also Steven).

Considering the four factors in light of petitioner's testimony (and the fifth factor, favorable to petitioner, of disclosure), we decline to infer from the factors listed in Fla. Stat. sec. 726.105(2) that Steven's actual intent was to hinder, delay, or defraud any creditor of his in connection with the transfer.

Respondent offers no other basis for us to find a fraudulent transfer within the meaning of Fla. Stat. sec. 726.105(1)(a). There are numerous persons other than petitioner who could have shed light on the Pelican Avenue transaction.

Respondent failed to call any of them.  Respondent has failed to prove a fraudulent transfer within the meaning of Fla. Stat. sec. 726.105(1)(a).

c.  Fla. Stat. Sec. 726.105(1)(b)

Respondent seeks to prevail under Fla. Stat. sec. 726.105(1)(b) by showing that Steven made the transfer "[w]ithout receiving a reasonably equivalent value in exchange", and when he "[i]ntended to incur, or believed or reasonably should have believed that he * * * would incur, debts beyond * * * his ability to pay as they became due."  Fla. Stat. sec. 726.105(1)(b)2.  To satisfy the intent or belief element in the statute, respondent relies on what Steven reasonably should have believed, not on what he intended or actually believed:  "Steven W. Van Aernam * * * reasonably should have believed that he would soon incur debts beyond his ability to pay as they became due at the time he made * * * [the] transfer."  Respondent argues that Steven had already accrued substantial debts to the Internal Revenue Service and:  "With the impending criminal fine of as much as $250,000.00, Steven W. Van Aernam reasonably should have believed that, on July 25, 1995, he would soon incur debts beyond his ability to pay as they became due."

First, respondent has failed to prove that the transfer was not made for reasonably equivalent value.  We have found that Steven contributed no money to the purchase of the property, yet,

on account of finding the property, he would share in any profit from developing the property. See supra sec. IV.D.3.b. There was no development of the property, and respondent has failed to show that Steven's interest in the property was worth more than the $10 that he received in consideration of the transfer. Also, respondent has failed to carry his burden of proving that, at the time of the transfer, Steven reasonably should have believed that he would incur debts beyond his ability to pay them as they became due. Respondent's principal failure in that regard is the same as his failure with respect to his showing of Steven's insolvency. See infra sec. IV.D.2. He has not shown Steven's assets, and, therefore, we cannot reach the conclusion that Steven lacked the ability to pay. Nor can we infer that fact from the fact that Steven did not pay his debts. Although the parties have stipulated that, on September 28, 1995, Steven incurred a criminal fine of $250,000, they have not stipulated, nor is there any evidence, that Steven did not pay that fine when it came due. Also, as stated, we have in evidence records of assessments and payments pertaining to Steven's taxable years 1988 through 1990. Respondent's witness testified to some of the entries on those records. She did not, however, testify that any assessments shown on those records remain unpaid. The records are not self-explanatory, and we will not presume to interpret them ourselves, especially since respondent failed to propose any

findings of fact based either on the records or his witness'
testimony.

Respondent has failed to prove a fraudulent transfer
within the meaning of Fla. Stat. sec. 726.105(1)(b)2.

V.  <u>Conclusion</u>

Petitioner is not, on account of the transfer of the
Pelican Avenue property, liable as a transferee of Steven.

<u>Decision will be entered</u>

<u>for petitioner</u>.