**WARNER BROS. PICTURES, Inc., v. WESTOVER et al.**

No. 5751.

District Court, S. D. California, Central Division.

Feb. 11, 1947.

Freston & Files, H. R. Kelly and Bion B. Vogel, all of Los Angeles, Cal., for the plaintiff.

James M. Carter, U. S. Atty., E. H. Mitchell and George M. Bryant, Asst. U. S. Attys., and Eugene Harpole, Sp. Atty. Bureau of Internal Revenue, all of Los Angeles, Cal., for defendant.

YANKWICH, District Judge.

The plaintiff seeks to recover the sum of $7550.16, being tax, interest and penalty collected from it on September 26, 1945, under the Revenue Act of 1941, Section 3406 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3406(a) (4), and covering the period between October 1, 1941, and July 31, 1945. Timely claims for refund have been denied.

The plaintiff is engaged in the production of motion pictures. The Collector levied an assessment on certain equipment known as "process screens" which the plaintiff manufactures for its own use and which the Collector considered "photographic apparatus" on which a manufacturer's excise tax was due.

The process screen is a thin, translucent screen made from a formula of cellulose acetate and varying in size up to approximately 30 feet by 40 feet. It is mounted on a wooden frame to which it is attached by rubber bands.

Such screens are used to take the place of the oldfashioned painted drops, backgrounds and props with which we are so familiar in the theatrical field and in motion picture production. The latter, in turn, refer back to the backgrounds which photographers have used from the inception of the art.

The ordinary screens and drops used in making motion pictures are usually paintings on muslin or canvass, which are movable and can be used wherever a particular background is desired. The use of the process screen, which seems to have been introduced some ten years or so ago, makes it possible to project such background onto the back of the screen, so that the face of it will show the desired scene in front of which actors can act. This is done by projecting either a slide or still or what is known as a "key", i.e., a sequence of scenes on a motion picture film. The advantage which this process brings to motion pictures is that the actual photograph of a street can be thrown on the screen and the actors, by acting in front of it, give the illusion that they are actually on the particular street and their action melts into the happenings on the street. So that anyone who, as we did at the studio, views the scene as it appears on the face of the screen, either with the naked eye or through the camera, sees actors *in motion* in front of another scene *in motion*.

When the camera has registered the action, all we have is a series of stills,—that is, a series of stationary pictures in which the scene projected on to the process screen has become a part of the scene being shot.

And when, alongside the screen or in front of it, we have other props,—such as we had in the scene taken during the course of this trial,—consisting of stationary drops on which a forest scene was depicted with simulated trees and rocks in front, there is, in the motion picture film, no line of demarcation between the scenes on the painted drops and the scenes on the process screen. And one, who, unlike ourselves, had not assisted at the photographing, could not tell, on seeing the resulting photographs, which of the scenes *were* produced on the process screen and which *were not.*[1] For ultimately, there is no such thing as a motion picture. What we call so is merely a sequence of stationary pictures or frames, which, by being projected rapidly onto a projection screen, gives the impression of motion.

It can be seen readily that the use of these screens is important.

---

[1] The following photograph, which is Exhibit 8 in the case, illustrates the point. It was taken at the studio with a still camera, the photographer standing back of the person who is looking through the motion picture camera. To the extreme left can be seen a portion of a painted drop curtain depicting a forest scene. In the center is a blank process screen, as it looks before any images are projected on it. To the right is a process screen onto the background of which has been projected a forest scene. In the foreground are props simulating trees, rocks, shrubs and the like, harmonizing with the forest scene on the painted and process screens. One looking at the screen with the naked eye from the position of the person looking through the motion picture camera in the foreground, or looking at it through the camera would see the scene in the manner in which it appears in this photograph. It would also reflect in this form onto the negative in the unseen camera which photographed it. Except for the edges of the process screen showing the rubber bands which hold it to the frame, there is no way of telling the difference between the scenes photographed from the painted screen and those from the process screen. Had the range of the camera been narrowed, so as to omit the edges of the screens, the scene would have appeared without any discernable line of demarcation between the objects constituting the scene photographed.

But their manufacture and the extent of their use by the plaintiff is incidental, or subordinate, when we consider its vast business and the huge footage of the motion pictures it produces annually. And the money value of the screens in use is, comparatively, minimal.

Are these screens photographic "apparatus" or "equipment" under the provisions of Sections 3406(a) (4) and 3444 of the Revenue Act of 1941, 26 U.S.C.A. Int.Rev. Code, § 3444, and the regulations under them?

Section 3406(a) (4) provides, among other things, as follows:

"(a) Imposition. There shall be imposed on the following articles, sold by the manufacturer, producer, or importer, a tax equivalent to the rate, on the price for which sold, set forth in the following paragraphs (including in each case parts or accessories of such articles sold on or in connection therewith, or with the sale thereof) * * *

\* \* \* \* \* \*

(4) Photographic Apparatus. Cameras (except cameras weighing more than four pounds exclusive of lens and accessories) and lenses, photographic apparatus and equipment, and any apparatus or equipment designed especially for use in the taking of photographs or motion pictures or in developing, printing, or enlarging photographs or motion pictures, 25 per centum; unexposed photographic films (including motion picture films but not including X-ray film), photographic plates and sensitized paper, 15 per centum."

Section 3444 provides:

"(a) If—

(1) Any person manufactures, produces, or imports an article * * * and uses it (otherwise than as material in the manufacture or production of, or as a component part of, another article to be manufactured or produced by him which will be taxable under this chapter or sold free of tax by virtue of section 3442, relating to tax-free sales); * * * he shall be liable for tax under this chapter in the same manner as if such article was sold by him, and the tax (if based on the price for which the article is sold) shall be computed on the price at which such or similar articles are sold, in the ordinary course of trade, by manufacturers, producers, or importers thereof, as determined by the Commissioner." Treasury Regulation 46 (1940) Section 316.120 reads:

"The term 'photographic apparatus and equipment' includes 'any article used on or in connection with a camera or lens in the taking of a still or motion picture. The following are descriptive but not all-inclusive of such articles: range finders, view finders, lens extension tubes, filters, diffusers, tripods, focusing finders, etc.

"The phrase 'any apparatus or equipment designed especially for use in the taking of photographs or motion pictures or in the developing, printing or enlaging of photographs or motion picture films' includes the following articles which are descriptive, but not all-inclusive: Exposure meters, enlargers, lenses and other attachments for enlargers, tanks or pans designed for developing films, printing frames, photoflood lamps and reflectors, flash bulbs, etc."

■ The Government contends that the screens are apparatus or equipment designed for use in the taking of motion pictures. I do not agree.

The history of the taxing of photogaphic equipment, which counsel for the Government gave us in very extended form, throws no light on the subject. About all it discloses is that as governmental needs increase, new sources of revenue are sought. The history of excise taxes follows the usual pattern: From humble beginnings it has grown to include a large variety of products which are taxed either when sold by a manufacturer or in the hands of a person who manufactures them for his own use.

So here the Congress, in Section 3406(a) (4) taxes the manufacturer on the sale of certain products and in Section 3444, *to equalize matters,* taxes the person who makes the same articles for his own use.

These facts, truly vérités à la Palisse, still do not determine the matter. We go to the definitions contained in the statute. And we find that the photographic devices which are taxed are cameras and apparatus or equipment designed especially "for use in the taking of photographs or motion

pictures." The noun "taking" is defined as "that which is taken or received." So we speak of "takings" of money, a "taking" of fish. The "taking" of a picture is the act of capturing a scene, including its background, on the photographic film, by the aid of the camera, and the accessories attached to it or aiding in the process. The scene and its background composed of drop curtains, painted screens, processed screens, and actors, supply the subject matter which is to be taken. Or, to put it in another way,—the first group is the means, the second the subject of the "taking" or photographing, just as, in speaking of a "taking" of fish, we refer to the result of the angling, the *catch*, and not to the *angling itself*, net or line, hook and sinker held by the angler. The Congress had in mind not the props, the curtain drops, and subjects which are photographed, but the means of photographing them, of the type enumerated,—cameras, lenses and the like.

The Treasury Regulation, in defining the term "photographic apparatus and equipment", includes "any article used on or in connection with a camera or lens". And, in illustrating what it means, it names range finders, view finders, lens extension tubes, filters, diffusers, tripods, focusing finders, etc. In particularizing "apparatus and equipment" for use in motion pictures, it gives these illustrations: Exposure meters, enlargers, lenses and other attachments for enlargers, tanks or pans designed for developing films, printing frames, photoflood lamps and reflectors, flash bulbs, etc. Other objects which are actually being taxed, *under the omnibus clause,* as brought out by the Government, "on the ground that practice is entitled to some weight in construing the statute", are: *booms,* arms on which the camera sits, *century standards,* for holding little flags or gobos hanging on to the front of the camera to cut down or eliminate the light on the subject being photographed, *dollies,* rolling platforms on which cameras are set so as to make them move, *spotlights,* which concentrate light in one spot, *floodlights,* used to concentrate a high degree of light, or diffuse it into a definite space, so as to illumine it highly, *flash guns,* used

in the smoke department for still pictures, *blimps,* box-like devices attached to a camera to sound proof it, and *geared tiltheads,* platforms for holding cameras, so that they can be tilted up or down.

It is quite evident from this enumeration that we are dealing with devices, either attached to the camera or used in connection with it. Their taxation is truly in the spirit of the statute and regulation. For they are part of *the equipment* which is necessary in order to take pictures. They are not part of *the scene* which it is sought to photograph. The process screens and the scenes projected onto them are a part of the background as much as the painted drops, the artificial trees and rocks in the scene which we saw photographed. And yet it was shown, at the trial, *that these are not taxed.* The Government's explanation that "perhaps the Treasury Department overlooked something," shows the weakness of its position. Ordinarily, the Government insists on an all-encompassing interpretation. Usually, it seeks to support it by a regulation which is all-inclusive and which enumerates many objects not *specifically* designated in the statute. Here, the Government's own interpretation in its regulation and actual administrative practice, show that items of the type under consideration or similar to them, *are not being taxed.* Conceding that regulations are entitled to weight, which, at times, gives them the force of law, they are as binding on the Government as they are on the taxpayer. See Mertens, The Law of Federal Income Taxation, 1942, Sec. 3.20. As said by Judge Mathews in Pacific National Bank of Seattle v. Commissioner of Internal Revenue, 9 Cir., 1937, 91 F.2d 103, [104,] 105: "The suggestion that Treasury Regulations having the force and effect of law are binding on taxpayers, but not on the Commmissioner or on the Board of Tax Appeals, cannot be entertained. Tax officials and taxpayers alike are under the law, not above it."

And the fact that, in interpreting a tax statute, the Treasury Department has failed to apply it to certain matters or transactions is conclusive against the Government and prevents an unheralded change of policy. In McDermott v. Com-

missioner of Internal Revenue, 1945, 80 U.S.App.D.C. 176, 150 F.2d 585, an attempt was made to tax a prize of $3000 which the American Bar Association awarded to an attorney for an essay, under the Will of the late Erskine M. Ross, a Judge of our Circuit Court of Appeals. In holding that prizes of this character were not income, the Court referred to the fact that, over a long period of years, many scholarships and prizes awarded to students, scientists or scholars, *on a competitive basis,* were not taxed by the Internal Revenue Bureau. And this was held of decisive weight in determining that the particular prize should not be taxed.

"The Commissioner does not say that taxes have ever been collected on Nobel prizes, Guggenheim fellowships, Rhodes scholarships, Ross prizes, or any of·the many scholarships and prizes which, like these, have long been awarded on a competitive basis to scientists, scholars or students. We think we may infer that the practice has been to the contrary. This long-continued administrative interpretation of the law is entitled to great weight". McDermott v. Commissioner of Internal Revenue, 1945, 80 U.S.App.D.C. 176, 150 F.2d 585, 588.

And so here, the fact that the only devices given as illustrations in the statute and the regulations, and which are actually taxed, are objects which are used in connection *with the camera in taking a picture or developing it, and are not the subjects which the camera takes,* and that, in actual administrative practice, painted screens, drops, and kindred devices, serving the same purpose of providing background against which a scene is photographed, have not been taxed,—precludes, at least, in the absence of a new regulation, the inclusion of "process screens" among the items which are taxable under the excise statute under consideration.

■ It may well be true that, in interpreting a tax regulation, the rule of ejusdem generis should not be applied so as to destroy any portion of it, which is within the intent of the statute. United States v. Mescall, 1909, 215 U.S. 26, 30 S.Ct. 19, 54 L.Ed. 77; Helvering v. Stockholms Enskilda Bank, 1934, 293 U.S. 84, 89, 55 S.Ct. 50, 79 L.Ed. 211. But where, as here, the items specified in the statute did not exhaust the class, and the regulation has covered the entire ground, by including all items which could possibly be related under the general clause, and has not included anything unrelated to the genus enumerated,—we cannot resort to an "et cetera" clause to allow the administrative body to capture a new field. See In re Bush Terminal, 2 Cir., 1938, 93 F.2d 659.

Judgment will, therefore, be for the plaintiff as prayed for in the complaint, the amount to be computed by counsel for the plaintiff under Local Rule 7(g).

Findings and judgment to be prepared by counsel for plaintiff under Local Rule 7.