T.C. Memo. 2015-239

UNITED STATES TAX COURT

DANIEL LEE BERGLUND, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6656-13L.                            Filed December 14, 2015.

Daniel Lee Berglund, for himself.

<u>Jeremy J. Eggerth</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  The IRS proposed a levy, and filed a notice of lien, to

collect the 2007 income-tax liability of petitioner, Daniel Lee Berglund.  Berglund

requested a hearing before the IRS Appeals Office.  The Appeals Office upheld

**[\*2]** both collection actions. Berglund filed a petition appealing the determination under section 6330(d)(1).[1] We sustain the determination.

FINDINGS OF FACT

Berglund did not file a federal-income-tax return for the tax year 2007.

On November 8, 2011, the IRS sent Berglund a notice of deficiency for the tax year 2007. Berglund received the notice of deficiency. He did not petition the Tax Court for a redetermination of the deficiency.

The IRS claims that on March 26, 2012, an assessment was made of Berglund's income-tax liability for tax year 2007. Berglund asserts that the assessment is invalid because he contends the IRS does not have a signed summary record of assessment. As we explain below, we hold that the March 26, 2012 assessment is valid.

In a letter dated November 27, 2012, the IRS stated to Berglund: "We filed a Notice of Federal Tax Lien on 11/28/12". The letter stated that the notice of lien related to Berglund's income-tax liability for tax year 2007 and that this liability had been assessed on March 26, 2012. The letter advised Berglund of his right to request a collection-review hearing with the Appeals Office.

---

[1]All references to sections are to the Internal Revenue Code of 1986, as amended and in effect at all relevant times, unless otherwise indicated.

[*3]   On November 28, 2012, the IRS filed a notice of lien in Washington County, Minnesota, to collect Berglund's income-tax liability for tax year 2007. This is the lien filing referred to in the November 27, 2012 letter, even though that letter predated the lien filing by one day.

On November 29, 2012, the IRS issued a notice to Berglund that it intended to levy to collect his income-tax liability for tax year 2007.  The notice advised Berglund of his right to request a collection-review hearing with the Appeals Office.

On December 6, 2012, Berglund sent the IRS a request under the Freedom of Information Act (FOIA).  He requested copies of 14 documents, including "Form 23C, if it has been entered into the IRS record keeping system as a Substitute for Return".  Berglund did not specifically ask for a signed copy of the Form 23C.

On December 10, 2012, Berglund sent the IRS a request for a collection-review hearing in response to both the November 27, 2012 notice of lien filing and the November 29, 2012 notice of intent to levy.  In his request, Berglund contended that he had no income for tax year 2007 because he did not do business in the District of Columbia.  He also contended that the Form 1040 was an "outlaw form".

**[\*4]**   On December 20, 2012, Berglund sent the IRS an addendum to his December 10, 2012 request for a collection-review hearing.  Berglund demanded that the IRS withdraw the notice of lien filed against him.  He claimed that the IRS did not have "a lawful, procedurally valid, signed assessment" for his tax year 2007.  He requested proof of verification from the Secretary of the Treasury that the requirements of any applicable law or administrative procedure had been met pursuant to sections 6320 and 6330.  He also requested various documents regarding his tax year 2007 including copies of:  (1) "[t]he * * * procedurally valid assessment prepared by the IRS and/or its agents against me for the tax year 12/31/2007 signed by an assessment officer", (2) all "assessment documentation", (3) the summary record of assessment, (4) the "Form 23-C or replacement form", (5) the "RACS report", and (6) "my form 4340".  He said that he was withdrawing any legal positions that were "classified and published by the IRS as frivolous or groundless".  He asked that the collection-review hearing take place by correspondence.

On December 27, 2012, Berglund sent the IRS a second addendum to his December 10, 2012 request for a collection-review hearing.  In this addendum, Berglund stated that he could not find the statute that imposed a federal-income

[*5] tax on him or required him to file a federal-income-tax return. He demanded that the IRS identify the statute.

On January 5, 2013, Berglund sent the IRS a third addendum to his December 10, 2012 request for a collection-review hearing. In this addendum, Berglund demanded that the Appeals Office prove that he was a "taxpayer". Berglund also requested 22 pieces of information about the IRS employees involved in his collection-review hearing, including an affidavit from each employee stating that he or she did not pay to be appointed to office.

On January 10, 2013, the Appeals Office wrote a letter to Berglund stating that it had received his request for a collection-review hearing and had assigned the case to its St. Paul, Minnesota, office.

On January 30, 2013, the IRS's disclosure office sent Berglund a letter responding to his December 6, 2012 FOIA request. The letter stated that the IRS had found 29 pages of documents that were responsive to the request and that all 29 pages were enclosed with the letter. It further stated that both Form 23C and RACS 006[2] are valid summary records of assessment but that the RACS 006 is the computer-generated replacement for the Form 23C. Enclosed with the letter were

---

[2]The full name of RACS 006 appears to be "Revenue Accounting Control System (RACS) Report 006". Rev. Rul. 2007-21, 2007-1 C.B. 865.

[*6] 29 pages of documents.[3]  The IRS concedes in its posttrial brief that an unsigned summary record of assessment for the tax year 2007 (presumably RACS 006) is among these 29 pages of documents, but the IRS does not identify which of the 29 pages it is.

On February 7, 2013, the Appeals Office wrote a letter to Berglund scheduling a correspondence hearing for him on February 25, 2013.  The letter gave Berglund two weeks--i.e., until February 21, 2013--to submit any relevant documents to the Appeals Office, including--"[r]egarding the liability you are raising"--a Form 1040 for tax year 2007.

On February 18, 2013, Berglund wrote a letter to the Appeals Office in response to its February 7, 2013 letter.  Berglund wrote that he again was withdrawing any legal positions that were "classified and published by the IRS as frivolous or groundless."  Berglund asked the Appeals Office to add the letter to his previous submissions regarding the collection-review hearing.

On March 11, 2013, the Appeals Office issued its notice of determination. In the notice the Appeals Office stated that it "verified through transcript analysis" that the assessment of income-tax liability had been made for tax year 2007.

---

[3]These 29 pages are identified in the trial record as Exhibit 29-J, pages 36 to 64.

**[*7]** Among the documents considered by the Appeals Office in verifying that an assessment had been made were the following computerized transcripts of account:

- printouts from IRS electronic records in the Integrated Data Retrieval System, stamped with the date January 15, 2013, and

- an undated printout from the Integrated Data Retrieval System.[4]

The Appeals Office did not review the original summary record of assessment to verify that it had been signed by an assessment officer. The notice of determination went on to state that Berglund had raised only frivolous issues in his request for a collection-review hearing and that the Appeals Office does not consider frivolous issues. The notice of determination stated that in his letter dated January 5, 2013, Berglund had requested withdrawal of the lien filing and that he had raised no other issues. The notice stated that Berglund had not presented any information that would support withdrawal of the lien filing. It further stated that the Appeals Office had been unable to determine whether Berglund had received a notice of deficiency and consequently had permitted

---

[4]The IRS contends in its post-trial brief that these documents, which it describes as "computerized transcripts of account", were among the documents that the Appeals Office considered in verifying that an assessment has been made. This contention is consistent with the trial record. Berglund does not dispute the contention.

[*8] Berglund to raise the issue of his underlying tax liability. However, according to the notice, Berglund did not contest his underlying tax liability.

Berglund filed a timely petition challenging the determination. He was a resident of Minnesota when he filed his petition. In his petition, Berglund contended that the IRS did not have a "signed" assessment because none of the 29 pages of documents he received in response to his FOIA request was signed.

At trial we admitted a copy of the administrative file of the Appeals Office. Among the documents in the administrative file was a copy of Berglund's FOIA request, but not the IRS disclosure office's response. At trial the IRS introduced a Form 4340, "Certificate of Assessments, Payments, and Other Specified Matters", for Berglund's tax year 2007 which had not been considered at the collection-review hearing and was not part of the administrative file. The Form 4340 states that Berglund's income-tax liability for tax year 2007 was assessed and that the "ASSESSMENT DATE (23C, RAC 006)" was March 26, 2012.

In his post-trial brief, Berglund contends that there is no signed summary record of assessment because the summary record of assessment he had received in response to his FOIA request was unsigned, that section 301.6203-1, Proced. & Admin. Regs., requires the summary record of assessment to be signed, and that without a signed summary record of assessment there is not a valid assessment for

[*9] tax year 2007. Berglund contends that to verify that the "assessment" was signed, the Appeals Office had to "obtain the original document, or a true copy of the original document, and examine it". Its failure to do so, he argues, violated its duty under section 6330(c)(1) to verify that the requirements of any applicable law or administrative procedure have been met.

OPINION

The Internal Revenue Code directs the Treasury Secretary--acting through the IRS--to determine, assess, and collect federal taxes. Secs. 6201(a), 6301. Assessment is a bookkeeping entry made by the IRS that initially establishes a taxpayer's liability for tax. Sec. 6203; see Wadleigh v. Commissioner, 134 T.C. 280, 289 (2010) ("A person's liability to pay a tax is established by assessment, which is the formal recording of a liability in the records of the Commissioner."). Section 6203 provides that an assessment of tax (which includes interest, additions to tax, and assessable penalties) "shall be made by recording the liability of the taxpayer in the office of the Secretary [of the Treasury] in accordance with rules or regulations prescribed by the Secretary." See sec. 6202. Section 301.6203-1, Proced. & Admin. Regs., specifies that an assessment is made "by an assessment officer signing the summary record of assessment", which, "through supporting records", must include the "identification of the taxpayer, the character of the

**[\*10]** liability assessed, the taxable period, if applicable, and the amount of the assessment." The date of the assessment is the date the summary record of assessment is signed. Id. Without a signed summary record of assessment, there is no valid assessment. See Brafman v. United States, 384 F.2d 863, 866-867 (5th Cir. 1967).

The IRS is authorized to assess any tax reported on the taxpayer's return. See sec. 6201(a)(1); Murray v. Commissioner, 24 F.3d 901, 903 (7th Cir. 1994); Meyer v. Commissioner, 97 T.C. 555, 559 (1991). To make an assessment of tax in addition to that shown on the return, i.e., a "deficiency", the IRS must first mail a notice of deficiency to the taxpayer. See secs. 6213(a), 6211(a) (defining deficiency). The notice of deficiency entitles the taxpayer to petition the Tax Court for a redetermination of the deficiency. Sec. 6213(a).

When the IRS assesses tax, a tax lien arises in favor of the IRS on all the taxpayer's property. Secs. 6321 and 6322. To secure its lien against others, the IRS can file a notice of the lien with the appropriate state or local government office for the location of the property. Sec. 6323(a), (f). The IRS can also seize the property subject to the lien (or any of the taxpayer's property) through its levy power. Sec. 6331(a) and (b); Michael I. Saltzman & Leslie Book, IRS Practice & Procedure, para. 14.04, at 14-30 to 14-31 (2d ed. 2015).

[*11] The IRS must offer the taxpayer a collection-review hearing with its Appeals Office after it files a notice of lien.  Sec. 6320(a)(1), (3)(B).  It must also offer the taxpayer a collection-review hearing with its Appeals Office before it can collect a tax through levy.  Sec. 6330(a)(1).  Both hearings can be held together.  See sec. 6320(b)(4).  The duties of the Appeals Office in conducting both types of hearings are set forth in section 6330(c).  Sec. 6320(c).  Section 6330(c)(1) requires the Appeals Office to obtain verification from the Secretary of the Treasury[5] that the requirements of any applicable law or administrative procedure have been met.  Section 6330(c)(2) provides that at the hearing the taxpayer may raise any issues regarding the unpaid tax or the collection action but cannot challenge the existence or amount of the underlying tax liability if he or she received a notice of deficiency.  The verification required by section 6330(c)(1) and the issues raised by the taxpayer under section 6330(c)(2) must be considered by the Appeals Office in making its determination.  Sec. 6330(c)(3)(A) and (B).  A taxpayer dissatisfied with the Appeals Office's determination may appeal it to the Tax Court.  Sec. 6330(d)(1).

The Tax Court reviews the determination of the Appeals Office under an abuse-of-discretion standard, except that, if the underlying tax liability is properly

---

[5]That is, the IRS.  See Nestor v. Commissioner, 118 T.C. 162, 166 (2002).

**[\*12]** at issue, then the underlying tax liability is reviewed de novo. Goza v.

Commissioner, 114 T.C. 176, 181-182 (2000). An abuse of discretion occurs

when the Appeals Office's determination is arbitrary, capricious, or without sound

basis in fact or law. Giamelli v. Commissioner, 129 T.C. 107, 111 (2007) (citing

Woodral v. Commissioner, 112 T.C. 19, 23 (1999)). Berglund's challenge to the

determination of the Appeals Office is resolved by evaluating whether the Appeals

Office complied with its duty under section 6330(c)(1) to verify that the

requirements of any applicable law or administrative procedure have been met.

See Nestor v. Commissioner, 118 T.C. 162, 166-167 (2002). In making such an

evaluation, we use an abuse-of-discretion standard of review. Id. at 166.

As part of its duty to verify that the requirements of any applicable law or

administrative procedure have been met, the Appeals Office must verify that the

IRS made an assessment.[6] To verify that the IRS had made an assessment of

---

[6]We observed in Carothers v. Commissioner, T.C. Memo. 2013-165, at \*14, that the Appeals Office must verify that an assessment had been made to satisfy its duty to verify imposed by sec. 6330(c)(1). Assessment is a necessary condition for both liens and levies. Secs. 6322 (lien arises at time assessment has been made), 6502(a) (after timely assessment, tax may be collected by levy). Because liens (in particular the filing of a notice of a lien) and levies are the two types of collection actions that trigger a taxpayer's right to a collection-review proceeding, see secs. 6320(a)(3)(B) (filing of notice of lien), 6330(a)(3)(B) (impending levy), it is sensible that in a collection-review hearing, one of the requirements of "applicable law" that must be verified is whether an assessment has been made.

[*13] Berglund's tax year 2007 liability, the Appeals Office reviewed computerized transcripts of account. It did not review the original summary record of assessment to verify that it had been signed by an assessment officer.

Section 6330(c)(1) does not mandate that the Appeals Office rely on a particular document to satisfy the verification requirement. Craig v. Commissioner, 119 T.C. 252, 261-262 (2002). When the Appeals Office has relied on Forms 4340 to verify that an assessment has been made, the Court has held that it did not err in doing so, provided that the taxpayer did not show some irregularity in the assessment procedures. Davis v. Commissioner, 115 T.C. 35, 40-41 (2000) (holding that a Form 4340 reflecting that the tax liabilities were assessed and remain unpaid is sufficient verification under section 6330(c)(1) unless the taxpayer shows some irregularity in the assessment procedures). When the Appeals Office has instead relied on computerized transcripts to verify that an assessment has been made, the Court has held in some cases that it did not err in doing so. May v. Commissioner, T.C. Memo. 2014-194, at *11-*14 (computerized transcript); Sherwood v. Commissioner, T.C. Memo. 2005-268, slip op. at 8, 13 (computerized transcript); Howard v. Commissioner, T.C. Memo. 2002-81, slip op. at 3, 7 ("The information contained in a Form 4340 that is used to verify the validity of an assessment is also contained in a computer transcript of

[*14] account.  Accordingly, the Appeals officer's reliance upon the computer transcript as verification of petitioner's liability satisfied the requirements of section 6330(c)(1)."); see also Roberts v. Commissioner, 118 T.C. 365, 371 n.10 (2002), aff'd, 329 F.3d 1224 (11th Cir. 2003).  By analogy to the cases involving Forms 4340, the Appeals Office can rely on computerized transcripts only if the taxpayer has not shown some irregularity in the assessment procedures.  See, e.g., Kubon v. Commissioner, T.C. Memo. 2011-41, slip op. at 11, aff'd, 479 F. App'x 759 (9th Cir. 2012).

In this case, the Appeals Office relied on computerized transcripts to verify that the IRS had assessed Berglund's tax year 2007 income-tax liability.  We observe that the computerized transcripts are indecipherable.[7]  The inscrutability of computerized transcripts could in some instances be a bar to sustaining the Appeals Office's determination.  See Barnes v. Commissioner, T.C. Memo. 2010-30, slip op. at 10-11, 13-16.  This is not such a case.  First, Berglund's contention is not that the particular type of records relied on by the Appeals Office (i.e., computerized transcripts versus Forms 4340) were an invalid means of verifying that an assessment had been made, but that no verification is sufficient without

_____

[7]The computerized transcripts are incomprehensible on their face, and the trial record does not assist us in understanding them.

[*15] reviewing the original summary record of assessment. We need only

consider whether this particular omission constitutes an error. Second, the Form

4340 was introduced by the IRS at trial,[8] and this Form 4340 shows that an

_____

[8]The Form 4340 was not part of the administrative file compiled by the
Appeals Office. Under the administrative-record rule, a court reviewing an agency
action cannot generally consider evidence outside the administrative record. See
Robinette v. Commissioner, 439 F.3d 455, 459 (8th Cir. 2006), rev'g 123 T.C. 85
(2004).
    There is conflicting authority as to whether the administrative-record rule
governs the Tax Court's review of a determination in a collection-review hearing.
In Robinette v. Commissioner, 123 T.C. at 101 the Tax Court held that the
administrative-record rule does not govern the Tax Court's review of a
determination in a collection-review hearing. The Tax Court was reversed by the
Court of Appeals for the Eighth Circuit, which held that the administrative-record
rule governs such review. Robinette v. Commissioner, 439 F.3d at 458-462. The
Tax Court is bound by the precedent of the circuit to which our cases are
appealable. Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d
985 (10th Cir. 1971). An appeal of a Tax Court decision involving a "petitioner
seeking redetermination of tax liability" is reviewed by the circuit in which the
petitioner resides, unless the parties stipulate venue in another circuit. Sec.
7482(b)(1)(A). Berglund resides in the Eighth Circuit. Therefore, his appeal from
this case would be to the Court of Appeals for the Eighth Circuit, assuming that a
decision in this case is considered to involve a "petitioner seeking redetermination
of tax liability" and that the parties do not stipulate venue in another circuit.
However, in Byers v. Commissioner, 740 F.3d 668, 670 (D.C. Cir. 2014), aff'g
T.C. Memo. 2012-27, the Court of Appeals for the D.C. Circuit held that a
collection-review case does not involve the redetermination of tax liability,
therefore an appeal of a collection-review case is heard by the D.C. Circuit. See
sec. 7482(b)(1). Under Byers, an appeal of this case would be heard by the D.C.
Circuit rather than the Eighth Circuit. The Court of Appeals for the D.C. Circuit
has not yet weighed in on the question of whether the administrative-record rule
governs a determination in a collection-review hearing. Even if the
administrative-record rule governs the Tax Court's review of a determination in a

(continued...)

[*16] assessment was made. See Rocovich v. United States, 933 F.2d 991, 994 (Fed. Cir. 1991); Geiselman v. United States, 961 F.2d 1, 5-6 (1st Cir. 1992) (the "23C date" on a Form 4340 is "the date the assessment officer signed the Form 23C"); United States v. McCallum, 970 F.2d 66, 70-71 (5th Cir. 1992); Hefti v. IRS, 8 F.3d 1169, 1172-1173 (7th Cir. 1993); Hughes v. United States, 953 F.2d 531, 535 (9th Cir. 1992); March v. IRS, 335 F.3d 1186, 1187-1189 (10th Cir. 2003); United States v. Chila, 871 F.2d 1015, 1017-1018 (11th Cir. 1989); Davis v. Commissioner, 115 T.C. at 40-41. Therefore, even if we were to determine that the Appeals Office had erred in relying on the computerized transcripts, we would decline to remand the case to the Appeals Office for it to examine the Form 4340 because such a remand would not be productive. See Nestor v. Commissioner, 118 T.C. at 167.

We next consider whether Berglund showed some irregularity in the assessment procedures. Berglund contends that he demonstrated to the Appeals Office that there was an irregularity that required the Appeals Office to verify that the summary record of assessment had been signed. Berglund had obtained a

---

[8](...continued) collection-review hearing (the type of determination challenged by Berglund), we would still be permitted to consider the Form 4340. See Bowman v. Commissioner, T.C. Memo. 2007-114, slip op. at 15-17, aff'd, 285 F. App'x 309 (8th Cir. 2008).

**[\*17]** summary record of assessment through FOIA, 5 U.S.C. sec. 552 (2006).

The summary record of assessment he obtained was unsigned. Berglund wrote to

the Appeals Office to argue that the IRS had no "signed assessment" for 2007.

We disagree that Berglund demonstrated an irregularity in the assessment

process. In his FOIA request, Berglund had requested a Form 23C, which is a

type of summary record of assessment. See, e.g., March, 335 F.3d at 1188-1189;

Roberts v. Commissioner, 118 T.C. at 370 n.8. But he did not specify that he

wanted the signed version of the Form 23C. Cf. Pursifull v. United States, 92-2

U.S. Tax Cas. (CCH) para. 50,346 at 85,126-85,129 (S.D. Ohio 1992) (plaintiff

served discovery request on United States for signed summary records of

assessment), aff'd, 19 F.3d 19 (6th Cir. 1994). Furthermore, section 6203, which

governs the IRS's responses to taxpayer requests for copies of records of

assessments, did not require the IRS to provide a signed copy of a document in

response to Berglund's request.[9] That he received an unsigned summary record of

---

[9]Sec. 6203 provides that when a taxpayer requests a "copy of the record of the assessment" (as Berglund arguably did in his FOIA request for the Form 23C), the IRS must provide the taxpayer "a copy of the record of the assessment." A copy of the assessment need not include any signed documents. See Best v. Commissioner, T.C. Memo. 2014-72, at \*18; sec. 301.6203-1, Proced. & Admin. Regs.

**[\*18]** assessment does not mean that no signed summary record of assessment exists.[10]

Under these circumstances, we hold that (1) the assessment was valid and (2) the Appeals Office did not abuse its discretion in concluding that it had verified that the assessment had been properly made. See Craig v. Commissioner, 119 T.C. at 262. Therefore, we sustain the determination of the Appeals Office. In its brief the IRS requests that the Tax Court impose a penalty on Berglund under section 6673, which authorizes the Tax Court to require a taxpayer to pay the United States a penalty whenever it appears to the Court that the taxpayer has instituted or maintained proceedings primarily for delay, the taxpayer's position in

---

[10]Our conclusion is analogous to that of the Court in Carothers v. Commissioner, T.C. Memo. 2013-165. In Carothers, the taxpayer had received a FOIA response in May 2005 from the IRS stating that an assessment had not yet been made. Id. at \*14. This May 2005 FOIA response did not discredit the IRS's claim that an assessment had been made on October 24, 2005, several months after the FOIA response. Id. at \*14-\*15. The Court stated: "A statement by the IRS 'that no legal assessment is on record' as of May 2005 is irrelevant for the purpose of showing whether an assessment was later made on October 24, 2005." Id. at \*15.

**[*19]** the proceedings is frivolous or groundless, or the taxpayer unreasonably failed to pursue available administrative remedies.  We decline to impose such a penalty.

<u>Decision will be entered for</u>

<u>respondent</u>.